FILED
Clerk
District Court

JUN - 9 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

ORIGINAL

GEORGE L. HASSELBACK, Esq.
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

Attorneys for Plaintiff Bernard Sikimour Phillip

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| BERNARD SIKIMOUR PHILLIP, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF STATE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT and NANCY K. FINN, individually and in her official capacity, <br><br> Defendants. | CIVIL CASE NO. 05-0039 <br><br> DECLARATION OF JANE MACK IN SUPPORT OF PETITION FOR ATTORNEY FEES |

I, Jane Mack, declare under the penalty of perjury according to the laws of the United States and the CNMI that the following is true and based upon my personal knowledge, except where noted otherwise. I am competent to testify and, if called to testify, I would state as follows:

1) I am the Directing Attorney for the Marianas Office of Micronesian Legal Services Corp. ("MLSC"). In this capacity, I supervise others in my office and handle client cases. Since the Trusteeship Agreement was terminated, I have represented many people who seek issuance of their United States Passports. In my experience, some U.S. citizens need help because they do not receive their passports when they are born in Chuuk and the U.S. State Department, Honolulu Passport Office wrongly refuses to accept their documentation of name

and date of birth. These citizens typically cannot afford to hire legal counsel to represent them in suits against the United States and its various agencies.

2) Bernard Sikimour Phillip, the plaintiff in the above-captioned matter is a U.S. citizen who sought help from the Marianas Office of MLSC to get his passport. Our files show that the United States Department of State, Passport Agency, initially shelved his application because he did not provide an affidavit from his dead parents or others living at the time of his birth in Dublon, Chuuk in 1933. Instead, the U.S. Passport Agency advised Mr. Phillip, who was very ill and needed medical referral off Saipan, to apply for an FSM passport. The U.S. Passport Agency did not provide any information with that advice that, if Mr. Phillip took their advice, they would construe it as an admission against his interest in proving his entitlement to a U.S. passport.

3) Having failed to mislead Mr. Phillip into giving up his entitlement to a U.S. passport as a U.S. citizen, the U.S. Passport Agency reverted to refusing to accept the certified copy of his Chuuk-government-issued birth record. Records in our files show that the U.S. Passport Agency demanded extra corroboration of the details of Mr. Phillip's birth. Based on the historical record, Dublon, the island of Mr. Phillip's birth, was the center of the Japanese government in Chuuk (then Truk) and was heavily bombed during World War II. Birth records and contemporaneous records from 1933 are virtually non-existent. Ms. Finn of the U.S. Passport Agency is aware of that records from Chuuk islanders born before World War II are not generally available from previous applications and litigation. (See paragraph 5).

4) By letter dated January 30, 2001, the Marianas Office pointed out to the U.S. Passport Agency that the procedures the agency was using for additional verification were based on regulations concerning birth certificates issued in the U.S. And in contrast, there are no federal regulations or statutes that require additional documentation for information about birth when there is a certified birth record from a foreign country. Additionally, all of Mr. Phillip's documents, from his Trust Territory passport, to the Certificate of Identity issued by the CNMI

in anticipation of the Trust termination, to his hospital and work records list identical information about Mr. Phillip's date and/or place of birth.

5) Previously, I represented two United States citizens of Chuukeese ancestry who became citizens under § 301 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, P.L. 94-241 ("The Covenant"). The U.S. Passport Agency continually demanded more verification of their birth details and would not issue their U.S. passports. In order to help them, I filed a case in this Court, *Ilal & Okaruru v. U.S. Sec'y of State, et al.* C.A. # 96-08. During the course of the proceedings, I provided evidence to the government defendants that showed that no secondary birth records exist for birth certificates issued by the Chuuk Clerk of Courts for births before World War II (and in many cases, before the 1960's). This information was not specific to the two individuals in the *Ilal* case, but rather described the state of affairs of the record keeping with the Chuuk Clerk of Courts.

6) The case of Mr. Phillip is similar to that of Ilal and Okaruru, addressing both the demand for secondary birth information despite a certified birth record from Chuuk and the agency's finding fault with clear evidence of domicile. Our office represented Mr. Phillip in his later application for his United States passport. In his 2003 application, we provided the U.S. government with supporting documents. Despite the provision of these documents, Mr. Phillip's application was not finally disposed of until two years later.

7) After repeated attempts to clarify what documents the Department of State would accept to "prove" Mr. Phillip's status as a United States citizen, and repeated attempts by Nancy K. Finn to shelve his application by filing it "without further action," Mr. Phillip's passport application was rejected via a letter on July 29, 2005. The letter refers to applications for U.S. passport filed in 1999, 2000 and 2003 and says they were carefully reviewed. The U.S. Passport Office then stated that "They show that you were born in Chuuk, Federated States of Micronesia on May 31, 1933." The letter acknowledged receipt of proof that Mr. Phillip had registered to vote in CNMI municipal elections before January 1, 1975. But the agency found that his failure to provide "acceptable early secondary evidence of birth" was grounds for its action: "your

application has been denied." However, the evidence was clearly sufficient as to his date and place of birth.

8) The U.S. Passport Agency also demanded additional evidence as to Mr. Phillip's domicile. The relevant period under Covenant §301(b) was 1981 through 1986. Mr. Phillip's evidence included earnings on his social security record, his CNMI election commission certificate showing voting in municipal elections before 1975 and in every CNMI wide election from 1977 through the early 1989, records of health visits at the CHC, affidavits from long-time residents recalling his presence here, his own affidavit and his daughter's affidavit. The evidence amassed showed Mr. Phillip's presence in the CNMI from approximately 1973 through the date of submission of the evidence. In fact, the evidence of Mr. Phillip's domicile was overwhelming.

9) The U.S. Passport Office refused to employ the legal principle that domicile continues until changed, and instead implied that there was a weakness in the evidence for March 1985 through 1986. In *Ilal & Okaruru vs. U.S. Sec'y of State, et al.,* the defendants, in their answer, said they were waiting for additional proof of "residency" before issuing a passport to Okaruru. In settlement negotiations, the meaning of domicile, which is what the Covenant requires for citizenship, was discussed and the legal principle that domicile continues until changed was clearly recognized. By the time of the Phillips case, officials of the U.S. Passport Office knew or should have known that it is arbitrary and capricious to find fault with proof of domicile by nitpicking about a perceived weakness in proof of residency during some month in a long period of time where evidence from both before and after clearly shows continued presence (and domicile) in the CNMI.

10) The MLSC records show that Mr. Phillip had at least two worrisome times when he needed to travel for medical reasons, and needed a U.S. passport to facilitate that travel, but had to make special arrangements. The refusal of the U.S. government, through its agencies, to issue a passport to this U.S. citizen, had actual repercussions on him and infringed on his right to travel at times when he was most vulnerable. Our efforts to help Mr. Phillip culminated in

referring the case to private counsel, where attorney fees could be awarded, for the wrongful denial and continuing refusal of the passport agency to issue him a U.S. passport.

Signed this 9th Day of June, 2006 on Saipan, CNMI:

By: /s/_____
JANE MACK.