George L. Hasselback, Esq.
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

Attorneys for Plaintiff Bernard Sikimour Phillip

F I L E D
Clerk
District Court

JUN - 9 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Bernard Sikimour Phillip,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. SECRETARY OF STATE,<br>UNITED STATES OF AMERICA,<br>UNITED STATES IMMIGRATION AND<br>CUSTOMS ENFORCEMENT and<br>AVIATION SERVICES LTD., dba<br>FREEDOM AIR,<br><br>Defendants. | CIVIL CASE NO. 05-<br><br>AMENDED DECLARATION OF<br>GEORGE L. HASSELBACK |

I, George L. Hasselback, declare under the penalty of perjury according to the laws of the Commonwealth of the Northern Mariana Islands and the United States of America, that the following is true and based upon my personal knowledge, except where noted otherwise, and if called to testify, I could do so competently:

1. In my capacity as attorney for Plaintiff Bernard Sikimour Phillip ("Mr. Phillip"), I instructed my office's accounting staff to prepare an itemized summary of the costs and attorney fees associated with my representation of Mr. Phillip in the above-captioned matter. A copy of this summary is attached hereto as "Exhibit A."

2. I have reviewed this summary and can verify that it accurately reflects the amount of time billed by the various attorneys that have worked on Mr. Phillip's case. This time does not reflect the full amount of time that was spent on the prosecution of Mr. Phillip's case.

3. This matter was initially brought to the attention of Mr. David Banes ("Mr. Banes"), a partner in my firm, who assigned the case to me but remained available for consultation and supervision of my work on this matter. Additionally, Mr. Joseph Horey ("Mr. Horey") also was available for my consultation and supervised some of the work that I did on this matter. Mr. Banes only recorded a portion of the time that he spent assisting me on this matter. The actual time spent by Mr. Banes in consulting with me and reviewing my work on this case are far in excess of the time that is reflected on this itemized statement.

4. I have reviewed this summary and can verify that it accurately reflects the various costs associated with Mr. Phillip's representation.

5. Utilizing the standard billing rates for the attorneys who worked on this matter, the costs and attorney fees associated with the prosecution of Mr. Phillip's case amount to $18,142.90.

6. Utilizing the statutory billing rate under the Equal Access To Justice Act, the costs and attorney fees associated with the prosecution of Mr. Phillip's case amount to $12,278.90.

7. In the initial stages of my representation of Mr. Phillip, I was instructed by my client to attempt to facilitate his travel from the CNMI to Guam on November 17, 2005 for a cultural exchange trip sponsored by the Commonwealth's Man-Amko Center ("the Center"). Mr. Phillip had desired to travel to Guam for this trip for many years, but without his U.S. Passport, he was unable to do so. He expressed a concern that due to his failing health that this would be the last year that he might be able to go.

8. On October 24, 2005, I contacted the Immigration section of the office of the CNMI Attorney General. I was informed that the appropriate agency for questions regarding travel from the CNMI to Guam would be the Guam office of United States Immigration and Customs Enforcement ("ICE").

9. Later that day, I contacted ICE and asked to speak with one of their agents on duty. I was transferred to an "Officer Sablan." I explained the situation regarding Mr. Phillip to Officer Sablan, and he informed me that while a United States passport is the "preferred" method of identification that U.S. citizens may use when traveling to Guam, that alternate documentation might be used. He and I spoke at length regarding what type of documentation would be sufficient for Mr. Phillip, and Officer Sablan seemed conversant with the requirements under § 301(b) of the Covenant to qualify for United States Citizenship. He put me on hold so that he could confer with a supervisor and when he spoke with me again, he said that the documentation that I described was sufficient to allow Mr. Phillip to enter Guam. Finally, he told me that the individual airlines were charged with assessing the sufficiency of such documentation prior to boarding any passenger.

10. That same day, I contacted a "Mr. Palacios" at the Man-Amko Center to determine which airline would be transporting Mr. Phillip to Guam. He informed me that it would be Freedom Air.

11. On October 25, 2005, I called Freedom Air and spoke with Ms. Bodie (sp?). She informed me that if Freedom Air boarded a person that ICE did not approve of, they would be fined $3000.00. For this reason, she informed me that Freedom Air would not accept Mr. Phillip unless he had a U.S. passport. I explained that ICE confirmed that he could be admitted with alternate documentation, but she said that Freedom Air would require something in writing from ICE that this documentation was sufficient, or Mr. Phillip would not be boarded, absent a U.S. passport.

12. I immediately called ICE again and spoke with Officer Sablan. He said that they would not produce anything in writing, but that I should fax over Mr. Phillip's documents and that he would confer with his supervisor to make sure that everything was in order.

13. On October 26, 2005, I followed-up with ICE and found that Officer Sablan was off-duty. I asked to speak to the supervisor with which he confirmed the sufficiency of Mr. Phillip's documents and was transferred to an individual with whom I had not previously spoken. She turned out to be the wrong supervisor and told me that the correct one, Ms. Lujan (sp?) was out sick and suggested I call back the next day.

14. On October 27, 2005, I called back and spoke with Ms. Lujan. She did not seem familiar with the facts of the case and took a moment to familiarize herself with the documents. I was then put on speakerphone and she and another woman asked me several questions regarding Mr. Phillip. I told her that there was a problem with his application for a passport and that we were working that out, but wanted to get him to Guam for his trip. She kept returning to the fact that he was not born in the CNMI (confusing the requirements of 301 (a) and (b) apparently). After a while the other woman said, "put him on hold" and they did so.

15. Ms. Lujan got back on the phone and told me that after speaking with a "Mr. Rocky Miner", the "port director" it was the position of ICE that Mr. Phillip would be denied entry into Guam. I asked her to confirm that he could use some alternate documentation, and she said that since the State Department was not issuing him a passport, ICE would not let him use alternate documentation of his citizenship. I asked her what alternate documentation an individual such as myself would need to travel to Guam from the CNMI and she asked where I was born. Upon learning that I was born in the U.S., she said that I would only need a birth certificate and a photo I.D., but that since Mr. Phillip was a citizen by way of the Covenant, he would need a U.S.

passport. She suggested I work with the liaison office in Guam for the Chuukese government and try to get him some documentation that way.

16. Upon finding that Mr. Phillip would not be allowed to provide an alternate form of proof for his citizenship, I drafted and considered filing a Motion For a Temporary Restraining Order compelling the airlines and Guam ICE to allow Mr. Phillip to travel with alternate proof of his citizenship. In the interests of resolving this amicably, I decided to contact CNMI Immigration to see if I could facilitate Mr. Phillip's travel in any other way. They suggested that I contact the United States Attorney on Guam.

17. I was able, through various channels and multiple phone calls taking hours of my time, to coordiate between the FSM Consulate on Saipan (to confirm that Mr. Phillip was born on Chuuk and therefore entitled to FSM citizenship), CNMI Immigration (for letters to CNMI Ports Authority to allow Mr. Phillip to leave and return to the CNMI) and Guam ICE (to allow Mr. Phillip entry into Guam) for Mr. Phillip to travel to Guam under a letter of passage from the FSM consulate on Saipan. I was able to accomplish this approximately 48 hours before Mr. Phillip was to leave. However, Mr. Phillip reported to me that the stress of the events leading up to that point caused his gastric ulcer to begin to bleed and he was hospitalized and unable to attend the trip.

18. In the interests of settling the issue of attorney fees without resorting to further involvement from the Court, I directed my office's accounting staff to remove all of the hours that I spent in the aforementioned arrangements for Mr. Phillip's trip to Guam and to re-calculate the final cost of our representation. This amounted to $15, 203.43 at our normal hourly rates and $10, 376.43 at the statutory rate under the EAJA. A copy of this re-calculation is attached hereto as "Exhibit B."

19. During the course of my representation of Mr. Phillip, I have learned that he is retired and living off of a limited and fixed income. Other than a meager income from social security and some personal belongings, Mr. Phillip does not have any appreciable assets that would make him ineligible for an award of fees and costs under the Equal Access To Justice Act.

20. Mr. Phillip is the prevailing party in the above-captioned case. A copy of the Order of this Court incorporating the terms of the agreement between Mr. Phillip and the various defendants that retained jurisdiction of this Court for the enforcement of that agreement is attached hereto as "Exhibit C."

Signed on Saipan, Commonwealth of the Northern Mariana Islands, this 2nd day of June, 2006:

_____
George L. Hasselback