**ORIGINAL**

1  LEONARDO M. RAPADAS
   United States Attorney
2  MIKEL W. SCHWAB
   Assistant U.S. Attorney
3  Sirena Plaza, Suite 500
   108 Hernan Cortez Ave.
4  Hagåtña , Guam 96910
   TEL: (671) 472-7332
5  FAX: (671) 472-7215/7335

6  Attorneys for the United States of America

**F I L E D**
Clerk
District Court

**JUN 2 3 2006**

For The Northern Mariana Islands
By_____
(Deputy Clerk)

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN MARIANA ISLANDS

10
   BERNARD SIKIMOUR PHILLIP,          )     CIVIL CASE NO. 05-0039
11                                     )
                 Plaintiff,            )
12                                     )
             vs.                       )
13                                     )
   UNITED STATES OF AMERICA,           )     **OPPOSITION TO ATTORNEY'S FEES**
14 UNITED STATES DEPARTMENT OF         )
   STATE,                              )
15 UNITED STATES IMMIGRATION AND       )
   CUSTOMS ENFORCEMENT and             )
16 NANCY K. FINN, individually and in her )
   official capacity,                  )
17                                     )
                 Defendants.           )
18 _____)

19

20          The United States opposes the Attorney's Fee application as submitted by the Plaintiff's

21 counsel and asserts that all of the necessary elements for an attorney's fee award under the  Equal

22 Access to Justice Act are absent in this case.

23          This case has its genesis in the application for a United States passport by an applicant

24 who originated from the Federated States of Micronesia and applied for United States citizenship

25 under specific provisions of the Covenant to Establish a Commonwealth of the Northern Mariana

26 Islands in Political Union with the United States of America ("Covenant") at Section 301(b).

27 State Department regulations require that all applicants for a U.S. Passport have the burden of

28 proving United States nationality and providing evidence thereof.  22 C.F.R. Sec.  51.40, 51.41.

1   Additionally, the regulations authorize the State Department to require the applicant to provide

2   other evidence deemed necessary to establish U.S. citizenship or nationality.  22 C.F.R. Sec.

3   51.54.  Prior to the filing of this litigation, the applicant failed to meet his burden of proof and

4   refused to pursue the requested documentation.  After a Complaint was filed the applicant's

5   counsel, the attorney for the United States, and the District Court assisted by encouraging and

6   helping the applicant to pursue and  provide the documentation requested by the Passport

7   Agency.  His U.S. passport was promptly issued upon receipt of the required documentation.

8        The United States, in the hope of reaching an amicable resolution of this matter, proposed

9   an Offer of Judgment at a sum of  $900.00  (Attached as Exhibit 1).  Plaintiff's counsel's

10  response was a filing for $18,000.00 in attorney's fees, now amended to $10,000.00.  In fact, an

11  award of attorney's fees is not appropriate under the circumstances of this case.

12       Under the "American rule," litigants ordinarily are required to bear the expenses of their

13  litigation unless a statute provides otherwise.  Carbonell v.  Immigration and Naturalization

14  Service, 429 F.3d 894, 897-8 (9th Cir. 2005).  The Equal Access to Justice Act (EAJA), 28 U.S.C.

15  § 2412, authorizes an award, to a prevailing party, of reasonable attorney's fees against the

16  Government "unless the court finds that the position of the United States was substantially

17  justified." Pierce v.  Underwood, 487 U.S. 552, 552-3 108 S.Ct. 2541 (1988).

18       The EAJA states that a litigant is entitled to attorney's fees and costs if: (1) he is the

19  prevailing party; (2) the government fails to show that its position was substantially justified or

20  that special circumstances make an award unjust; and (3) the requested fees and costs are

21  reasonable.  Carbonell, 429 F.3d at 898; *citing* Perez-Arellano v. Smith, 279 F.3d 791, 793 (9th

22  Cir. 2002); 28 U.S.C. § 2412(d)(1)(A)(2005).  The attorney's fees request submitted in this case

23  fails on all three requirements!

24       Plaintiff was not the "prevailing party".  To qualify as a prevailing party he must meet

25  two criteria.  Buckhannon Bd. & Care Home, Inc v. West Virginia Dep't of Health & Human

26  Res., 532 U.S. 598, 121 S.Ct. 1835 (2001).  First, he must achieve a "material alteration of the

27

28                                    - 2 -

1 | legal relationship of the parties."  Second, that alteration must be "judicially sanctioned."  <u>Id.</u> 532

2 | U.S. at 604-05; <u>Carbonell</u>, 429 F.3d at 898.

3 |   In the case of this applicant, the Passport Agency required that the applicant submit

4 | specified documentation.  Ultimately, the applicant did submit the required documentation.  It is

5 | apparent from the <u>Declaration of Jane Mack</u> and the <u>Amended Declaration of George L.</u>

6 | <u>Hasselback</u> (both Declarations filed on June 9, 2006) that the attorney would challenge the

7 | Passport Agency's  requirement of documentation.  Mr.  Hasselback states that "proving a

8 | negative proved to be quite time and labor intensive." <u>Hasselback</u> at 2.  Jane Mack cites to a case

9 | where information was submitted that "was not specific to the two individuals" in the case.

10 | <u>Mack</u> at 3.  These statements indicate that the attorneys view the requests for documentation as

11 | something they should challenge rather than assist the applicant to fulfill.  They are hostile to the

12 | requirements and see no need to document those gaps where a birth certificate or other

13 | information might be absent.  In contrast, the <u>Declaration of Nancy K. Finn</u> (Attached as Exhibit

14 | 2) states that the Passport Agency requires documentation from public records, "unless the

15 | applicant duly establishes that such information is not available." <u>Finn</u> at ¶ 9.

16 |   An example of Plaintiff's failure to comply with an appropriate request of the Passport

17 | Agency was when the applicant was asked to produce a statement from the Clerk of Court of

18 | Chuuk confirming the lack of records for his birth.  The applicant apparently made no effort to

19 | obtain the requested documentation.  Instead, he only submitted a copy of a letter apparently

20 | requested by, and sent to an unrelated individual.  <u>Finn</u> at ¶ 11.  It was not explained how he

21 | obtained the letter or why he thought it would be appropriate to submit it in lieu of information

22 | specific to himself.  Subsequent to the filing of the Complaint in this case, the U.S. District Court

23 | assisted the Plaintiff with calling the Clerk of Court of Chuuk who then conveyed the letter

24 | required by the Passport Agency. Other applicants have obtained similar letters about their

25 | records (either that the record for their birth was available, or was not) by requesting a letter from

26 | the Clerk.  There was no legitimate reason for Plaintiff's refusal to pursue this

27 |

28 |          - 3 -

1  documentation duly requested by the Passport Agency.

2      The necessity for the Agency to collect the proper documentation, specific to the

3  applicant, is axiomatic.  It is also required by State Department regulations and consistent with

4  recent amendments to United States laws, such as the Real ID Act of 2005 (Pub.L. 109-13, 119

5  Stat. 231)(May 11, 2005), that focus substantial United States government resources on ensuring

6  the integrity of government issued documents.  The meticulous and verifiable documentation

7  required for the issuance of a U.S. Passport is fundamental to maintaining it's integrity and

8  security.  The U.S. passport is one of the most reliable documents in the world.  Not only do the

9  required documents protect the security and integrity of the United States, the documents can be

10  essential to the applicant and to any "derivative" applications that are subsequently filed by his

11  family members.  The documents can remain relevant several generations later.  It can even be a

12  matter of concern for United States national security.

13      Another example of the problems with the applicant's documentation that Plaintiff had

14  yet to resolve was the submission of two separate voter registration documents that directly

15  contradicted each other and had an essential bearing upon whether applicant's application was

16  considered pursuant to section 301(b) or 301 c) of the Covenant.  Both documents had the

17  signature of the same Administrative Officer!  The submission of official documents that are

18  contradictory as to dates is a red flag for any government agency.  The applicant's submissions

19  were reviewed by the Passport Agency and given individual attention.  The applicant was simply

20  asked to clarify the contradiction.  Rather than resisting such efforts the applicant, and any

21  professionals assisting him, should have risen to the problem and corrected or explained it.  The

22  Passport Agency cannot, did not, and should not shrug off these red flags.

23      At no point did applicant "prevail" in having the Passport Agency compromise its

24  requirements for specific, reliable documentation.  Applicant is not a "prevailing party" under the

25  EAJA.

26      Even if the applicant were to be interpreted as a "prevailing party", he would have to

27

28                          - 4 -

1    show that the alteration of his "legal relationship" with the Passport Agency was "judicially
2    sanctioned." Buckhannon, at 604-05; Carbonell, at 898; 28 U.S.C. § 2412(d)(1)(A).  The Court
3    did not and would not order that the Passport Agency reduce the requirements for documentation
4    from passport applicants.

5        Further, there can be no award of attorney's fees where the court finds that the position of
6    the United States was "substantially justified." 28 U.S.C. 2412(d)(1)(A).  The phrase
7    "substantially justified" means justified in the main, justified to a degree that could satisfy a
8    reasonable person. Pierce, at 553.

9        The Passport Agency's requirement for documentation in this case was inherently
10   reasonable.  The Declaration from the Regional Director reflects that the Plaintiff's application
11   was handled by senior passport specialists and personally reviewed by the Director.  Finn at ¶ 7
12   & 8.  Custom letters were crafted to give the applicant personalized and relevant guidance
13   consistent with the Passport Agency's approach to all applicants who apply under § 301 of the
14   Covenant.  Requiring reliable documentation of the facts necessary to the issuance of a U.S.
15   Passport is substantially justified.  Requiring an applicant to establish that such information is not
16   available, when it is not, is also essential to the integrity of the U.S. passport.

17       Finally, the EAJA requires that the attorney's fees be "reasonable".  The attorney in this
18   case accepted a referral from the Micronesian Legal Services.  Predictably, his pro-bono client
19   had many needs that extended beyond assistance with fulfilling the documentation requested by
20   the Passport Agency.  Though his latest declaration states that he has attempted to discount the
21   efforts he made regarding airlines and other persons to help his client with travel plans and health
22   issues, there is still a bulk of such social services reflected in his billing records. The EAJA
23   allows for attorney's fees to a prevailing party, in "any civil action ... including proceedings for
24   judicial review of agency action." 28 U.S.C. § 2412(d)(1)(A).  No doubt the attorney's pro-bono
25   client was in need of assistance with travel and with his health, and also in need of discussion,
26   but these are inappropriate billings under the EAJA.

27

28                                        - 5 -

1      The EAJA provides one final provision for the Court to deny attorney fee's in this case.
2  The EAJA states that a Court may not make an award to a party if it "finds... that special
3  circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  This provision "gives the
4  court discretion to deny awards where equitable considerations dictate an award should not be
5  made." Oguachuba v INS, 706 F.2d 93, 98 (2d. Cir. 1983). Courts have applied it where the
6  party opposed to the United States shared some blame for the problem that lead to the litigation.
7  It has been applied where the party willfully avoided the INS (Oguachuba, at 94), where the party
8  contributed to "an inadequately developed administrative record" (Ortiz v. Chater, 1997 WL
9  50217 (E.D.N.Y.)), and where the attorney lacked "specificity in his initial itemization of hours
10 expended" (Chesser v. West, 11 Vet.App. 497 (USCVA 1998)).

11      The equitable circumstances that concern the United States in this case are manifested in
12 the declarations submitted in support of the Attorney's Fees.   The Declaration of Jane Mack
13 states that she believes that the applicant's use of his Federated States of Micronesian (FSM)
14 passport would be construed as "an admission against his interest". Mack at 2.  She states that
15 she believes that the Passport Agency "failed to mislead Mr. Phillip into giving up his
16 entitlement to a U.S. Passport... ." Id.

17      Contrary to Ms. Mack's representation, the use of an FSM passport would not have
18 negatively affected Mr. Phillip's eligibility for a U.S. passport.   The possession and use of the
19 applicant's FSM passport has no legal effect on his eligibility for United States citizenship. [1]  The
20 right to a U.S. passport is controlled by the United States Constitution, United States laws and
21 State Department regulations -none of which allude in any manner to other passports held by an
22 applicant.

23      Based on the unfortunate presumption of Ms. Mack that the Passport Agency was trying
24 "mislead" the applicant,  he was unable to travel to Guam where his family could have cared for

25

26      [1] It may be that Ms. Mack confuses these applications with the special circumstances of a
   distinctly different group of applicants who claimed necessity for a U.S. passport based on their being
27 "Stateless".

28                                          - 6 -

1  him during the illness described in the <u>Declaration of Hasselback</u> and reflected in the attorney's

2  billings.

3        Ms. Mack also states that, "Ms. Finn of the U.S. Passport Agency is aware of that (sic)

4  records from Chuuk islanders born before World War II are not generally available from previous

5  applications and litigation." She misses the necessity that the applicant make affirmative

6  assertions and provide proof that applies specifically to his application. She also glosses over the

7  important fact that many records have been located in individual cases and that those records

8  further the knowledge and insight the Agency needs to best serve the entire region.

9        The mistaken belief that the Agency is attempting to be insincere in requesting

10  documentation is dangerous and tragic not just because it leads to incorrect legal advice, it is also

11  likely to lead applicants to refrain from collecting and submitting the necessary documents to

12  gain approval for a U.S. Passport. An award of $ 10,000.00 in this case, where the applicant

13  simply did not, or would not, provide the requested documentation, will serve to further fuel

14  more such incorrect advice, with further delays and hardships for applicants. The requested

15  award would be unjust and damaging under these circumstances.

16        The Application for Attorney Fees should be denied. Plaintiff is not the "prevailing

17  party", the Government's position was substantially justified and the amounts listed are not

18  reasonable. An award of attorney's fees would be unjustified under the EAJA and "unjust" in

19  these circumstances.

20        So submitted this 23d day of June, 2006.

21

22                                      LEONARDO M. RAPADAS
                                        United States Attorney
23                                      Districts of Guam and the NMI

24

25                            By:    _____

26                                      MIKEL W. SCHWAB
                                        Assistant U.S. Attorney
27

28                                      - 7 -