# 7 FAM 087  CONSULAR ACCESS AND NOTIFICATION AND DUAL NATIONALS

*(CT:CON-106;  06-06-2005)*

Generally speaking, treaties do not require consular notification if the arrested or detained U.S. citizen is also a citizen of the host country. This is true even if the detainee's other country of citizenship is a mandatory notification country.  (While the VCCR provides that consular notification is at the option of the detainee, 56 countries are governed by bilateral consular conventions under which consular notification is **mandatory** whether or not the detainee/arrestee wishes the consular officer to be informed.  Posts should be familiar with the treaty provisions applicable to the host country.  See Consular Notification and Access feature on the Consular Affairs Internet web page.

# 7 FAM 088 THROUGH 089 UNASSIGNED

> American citizens for over fifty years and no form of government therefore or for the inhabitants thereof has been provided by the United States
>
> - Therefore, be it resolved by the Senate and House of Representatives of the United States of America in Congress assembled, that sovereignty of the United States over American Samoa is hereby extended over Swains Island, which is made a part of American Samoa

d. Native inhabitants of Swains Island of a race indigenous to that island who were not already U.S. citizens or nationals became non-citizen U.S. nationals if residing in Swains Island on March 4, 1925.

## 7 FAM 1125.3  Acquisition of Non-citizen U.S. Nationality by Birth Outside Outlying Possessions

*(TL:CON-66;   10-10-96)*

See 7 FAM 1140.

# 7 FAM 1126  COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (CNMI)

## 7 FAM 1126.1  Summary

*(CT:CON-105;   06-01-2005)*

a. *This instruction outlines policy and procedures for the adjudication of applications for persons claiming citizenship under the Covenant to Establish the Commonwealth of the Northern Mariana Islands in Political Union with the United States (Act of Mar. 24, 1976, Public Law No. 94-241, 90 Stat. 263, 48 U.S.C. 1801 (CNMI Covenant)).*

b. *The Trust Territory of the Pacific Islands (TTPI) was established on July 18, 1947. The TTPI originally included the areas, which are now the Commonwealth of the Northern Mariana Islands (CNMI), the Republic of the Marshall Islands (RMI), and the Federated States of Micronesia (FSM), as well as the Republic of Palau.*

c. *The trusteeship agreement was terminated for the majority of the territory in late 1986.  The Northern Mariana Islands became the self-governing Commonwealth of the Northern Mariana Islands (CNMI), in*

*political union with and under the sovereignty of the United States, on November 4, 1986. The Marshall Islands became the Republic of the Marshall Islands (RMI), a sovereign country in free association with the United States, on October 21, 1986. The Federated States of Micronesia (FSM) became a sovereign country in free association with the United States on November 4, 1986. The Republic of Palau (ROP) became a sovereign country in free association with the United States on October 1, 1994.*

d. *The TTPI was not considered to be part of the United States for the purposes of the INA, and persons born there did not acquire citizenship by birth in the United States. Under Sections 501, 503 and 506 of the CNMI Covenant, the CNMI is considered to be part of the United States under the INA only for the purposes and to the extent specified under Section 506(b) and (c). Section 506(b), which entered into force at 12:01 a.m. on November 4, 1986, Saipan time (9 a.m. EST November 3, 1986) states that "(w)ith respect to children born abroad to United States citizen or non-citizen national parents permanently residing in the Northern Mariana Islands, the provisions pf Section 301 and 308 of the Act will apply." The Department of State interprets Section 506(b) as only allowing periods of residence or physical presence in the Northern Marianas after 12:01 a.m. on November 4, 1986, Saipan time (9 a.m. EST November 3, 1986) to be counted as periods of residence of physical presence in the United States for the purposes of meeting parental residence or physical presence requirements under Sections 301 and 308.*

e. *At 12:01 a.m. on November 4, 1986, Saipan time (9:01 a.m. EST November 3, 1986) Article III (Citizenship and Nationality) of the CNMI Covenant (containing Sections 301, 302, 303) entered into force. It granted U.S. citizenship to certain natives and/or residents of the CNMI. In addition, the Department has decided to apply the Sabangan decision (see 7 FAM 1126.3(c)(5)) holding that two individuals born in the NMI on or after 11 A.M. January 9, 1978, Saipan time (8 P.M. EST January 8, 1978) and prior to 12:01 A.M. November 4, 1986, Saipan time (9:01 a.m. EST November 3, 1986), acquired citizenship under Section 501(a) of the CNMI Covenant to all individuals who were born in the NMI during that time period.*

f. *Republic of the Marshall Islands, Federated States of Micronesia and Republic of Palau Citizens: The Compacts of Free Association relative to the RMI, the FSM and Palau did not grant U.S. citizenship to persons who did not otherwise acquire it under U.S. law. These independent States are considered foreign countries for nationality purposes.*

g. *Department Referrals: Since acquisition of U.S. citizenship under the Covenant can be very complex, consular officers at U.S. embassies and*

*consulates with such cases may wish to contact CA/OCS/ACS or CA/OCS/PRI for guidance. Adjudication Managers at U.S. Passport Agencies with such cases may wish to contact PPT/PAS or PPT/HH for guidance.*

## 7 FAM 1126.2  Authorities

*(CT:CON-105; 06-01-2005)*

a. Article III, CNMI Covenant, Sections 301, 302, 303, and 304. 48 U.S.C. 1801 Approval of Covenant to Establish Commonwealth of Northern Mariana Islands. This statute includes the provisions of the Covenant. See also pages 497-500, Appendix Roman Number V, of the 104th Congress, 1st Session, Committee Print, Immigration, and Nationality Act (10th Edition).

> *Article III, Citizenship and Nationality, CNMI Covenant*
>
> *Section 301. The following persons and their children under the age of 18 years on the effective date of this Section, who are not citizens or nationals of the United States under any other provision of law, and who on that date do not owe allegiance to any foreign state, are declared to be citizens of the United States, except as otherwise provided in Section 302:*
>
> *(a) All persons born in the Northern Mariana Islands who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, and who on that date are domiciled in the Northern Mariana Islands or in the United States or any territory or possession thereof;*
>
> *(b) All persons who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, who have been domiciled continuously in the Northern Mariana Islands for at least five years immediately prior to that date, and who, unless under age, registered to vote in elections for the Marianas Islands District Legislature or for any municipal election in the Northern Mariana Islands prior to January 1, 1975; and*
>
> *(c) All persons domiciled in the Northern Mariana Islands on the day preceding the effective date of this Section, who, although not citizens of the Trust Territory of the Pacific Islands, on that date have been domiciled continuously in the Northern Mariana Islands beginning prior to January 1, 1974.*
>
> *Section 302. Any person who becomes a citizen of the United States*

> *solely by virtue of the provisions of Section 301 may within six months after the effective date of that Section or within six months after reaching the age of 18 years, whichever date is the later, become a national but not a citizen of the United States by making a declaration under oath before any court established by the Constitution or laws of the United States or any court of record in the Commonwealth in the form as follows: "I ---------- being duly sworn, hereby declare my intention to be a national but not a citizen of the United States.".*
>
> *Section 303. All persons born in the Commonwealth on or after the effective date of this Section [See Sec. 1003 of this note] and subject to the jurisdiction of the United States will be citizens of the United States at birth.*

b. Other U.S. Citizenship Laws. In general, applicants who have claims to citizenship under any other U.S. law should be documented under that law and not the CNMI Covenant. For example, a person born in the NMI of one U.S. citizen parent before January 9, 1978, should be documented under Section 301(g) of the INA, or applicable provisions of the Nationality Act of 1940. However, applicants born in the NMI of one or two parent(s) born in Guam before 1950 generally should be documented under Section 301(c) of the CNMI Covenant, as it is often difficult or impossible for them to obtain the evidence needed to document their claims under other laws. These customers should be advised that if their claims under the Covenant are established, they will acquire citizenship as of November 4, 1986, as opposed to on the date of their birth, which would be the case if they were able to submit sufficient documentation under INA 301(g).

## 7 FAM 1126.3  Interpreting the Citizenship and Nationality Provisions of the Covenant

*(CT:CON-105;  06-01-2005)*

a. When it went into effect in 1986, Section 301 of the Covenant was difficult to administer since it established a complicated set of criteria under which a CNMI domiciliary could acquire U.S. citizenship. These provisions required that the nationality of the applicant's parents and grandparents be ascertained in order to determine if the applicant acquired TTPI citizenship or possessed another nationality at the time of the effective date of the Covenant.

b. The language of the citizenship provisions and the Department's strict application of the law required judicial and negotiated interpretations.

c. *Court Decisions.  There have been several court decisions, which shaped the Department's interpretation of definitions appearing in the CNMI Covenant.  The most important of these decisions are as follows:*

(1) *Dela Cruz v. United States (U.S.D. Ct. CNMI, July 31, 1987) granted citizenship to persons who were under the age of 18 on November 4, 1986, were domiciled in the NMI or the U.S. on that date and were born in the NMI of at least one parent born in the former Trust Territory.  The Dela Cruz decision went further to define "all persons" as used in Section 301 as any person and his or her child or children.  Child is defined in Section 101(b)(1) INA.  Such children did not have to be born in the CNMI nor did they have to be domiciled in the CNMI or U.S. on November 4, 1986.*

(2) *Shoda and Reyes v. United States (U.S.D. Ct. CNMI, August 3, 1988) allowed for acquisition of citizenship for persons who were 18 or older on November 4, 1986, were domiciled in the NMI or the U.S. on that date and were born in the NMI of at least one parent born in the former Trust Territory.*

(3) *Barasi v. United States (U.S.D. Ct. CNMI, August 3, 1988) provided guidelines for determining whether an applicant met the continuous domicile requirement of Section 301(c) of the Covenant, as follows:*

(a) *The totality of the applicant's conduct will be used to determine domicile;*

(b) *The substantially continuous presence of the applicant in the NMI since before 1974 will be viewed as affirmative evidence of his or her intent to remain in the NMI indefinitely and accorded great weight; and*

(c) *Any official statement to the contrary about his or her residence made by the applicant will not by itself serve to negate his or her true intent.*

4. *Amog v. United States (U.S.D. Ct. CNMI, May 1, 1991) reaffirmed the Department's position that persons born in the CNMI on or after January 1, 1974 and before November 4, 1986 of two alien parents, neither of who acquired U.S. citizenship under the Covenant did not acquire U.S. citizenship pursuant to the Covenant.  Caution: Some of these individuals were admitted to the United States by showing only their CNMI birth certificate, and may file a U.S. passport application.  However, as a result of Sabangan, now the Amog class consists of only persons born in the CNMI between January 1, 1974 and 11 a.m., Saipan time January 9, 1978 (8 p.m. EST January 8,*

> *1978) of two alien parents, neither of whom acquired U.S. citizenship under the Covenant. This subset of the original Amog class does not acquire U.S. citizenship pursuant to the Covenant.*

> 5. *In Sabangan v. Powell, 375 F.3d 818 (2004), a panel of the U.S. Court of Appeals (9th Circuit) held that two individuals born in the Northern Mariana Islands between January 9, 1978, and November 3, 1986, acquired U.S. citizenship under section 501(a) of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America. The court reasoned that beginning at 11 A.M. January 9, 1978 (Saipan time), when Section 501(a) made Section 1 of Amendment 14 of the U.S. Constitution applicable in the Northern Marianas Islands under Section 501(a) "as if the Northern Mariana Islands were one of the several States," the Northern Mariana Islands were to be treated as if they were "in the United States" for purposes of the Citizenship Clause in the first sentence of Section 1 of Amendment 14. Although the Department (CA and L/CA) believed the decision was clearly erroneous, the Solicitor General's office did not seek Supreme Court review, and it is now final. In order to maintain a uniform application of the nationality laws and for operations reasons, the Department (CA) decided to apply the decision worldwide. Applications from individuals who were born in the Northern Mariana Islands between 11 a.m., Saipan time January 9, 1978 (8 P.M. EST, January 8, 1978) and 12:01 a.m. November 4, 1986 (9 a.m. EST, November 3, 1986), who provide satisfactory birth records and evidence of identity, and who otherwise meet the requirements and qualifications may be approved and a U.S. passport may be issued.*

## 7 FAM 1126.5  Adjudicating Claims Under the Covenant

### 7 FAM 1126.5-1  General Procedures

*(CT:CON-105;  06-01-2005)*

a. *Application Requirements. All first time applicants claiming citizenship or nationality under the CNMI Covenant are required to submit:*

  (1)  *A completed DS-11;*

  (2)  *Two passport photographs;*

  (3)  *Current identification;*

    (4)    *The required passport fees; and*

    (5)    *Evidence of U.S. citizenship or nationality.*

b. *Supplemental Statement:  In addition, an applicant claiming U.S. citizenship or nationality under Section 301 of the Covenant must complete a "Supplemental Statement for Applicants Claiming Citizenship Under Public Law 94-241," which must be signed in the presence of a consular officer at a U.S. embassy or consulate or a passport acceptance agent or passport specialist in the United States.  The supplemental statement contains the applicant's oath or affirmation that he or she did not owe allegiance to any other state on the effective date of the CNMI Covenant.  It also includes a statement as to whether the applicant has declared his or her intention to become a non-citizen national.  See 7 FAM Exhibit 1126.4.  When completed, the supplemental statement becomes a part of the application for a passport with which it is submitted.*

c. *Evidence of Citizenship.  Passport issuing officers at U.S. embassies and consulates abroad and U.S. Passport Agencies shall note all evidence provided on the application and/or a separate sheet of paper. Note in the evidence block the law and section under which the applicant acquired citizenship or nationality (for example, Public Law 94-241 Section 301(a)). Knowledge of the statute under which the applicant acquired will be necessary when they wish to transmit citizenship to their own children. A U.S. passport for the parent by itself will not suffice.  See 7 FAM Exhibits 1126.5, 1126.6, and 1126.7 Charts.*

## 7 FAM 1126.5-2  Definitions

*(CT:CON-105;  06-01-2005)*

*Citizens of the Trust Territory of the Pacific Islands.  A person is considered a citizen of the TTPI for the purposes of Sections 301(a) and 301(b) of the CNMI Covenant if as of November 3, 1986 (Saipan time) he or she:*

    (1)    *Had been born in the former TTPI (CNMI, RMI, FSM and Palau) and one or both parent(s) had been born in the former TTPI;*

    (2)    *Had been born outside the former TTPI to two TTPI citizen parents, and, if over 21 on November 3, 1986, became a permanent resident of the TTPI before reaching that age;*

    (3)    *Had been naturalized as a TTPI citizen.*

*Domicile.  Section 1005(e) of the CNMI Covenant defines "domicile" as "the place where a person maintains a residence with the intention of continuing*

*such residence for an unlimited or indefinite period, and to which such person has the intention of returning whenever he is absent, even for an extended period"*

**NOTE**: *A post office box is not evidence of domicile.*

## 7 FAM 1126.5-3  Applicants Claiming Citizenship Under Section 301(a) of the Covenant

*(CT:CON-105;  06-01-2005)*

*Section 301(a) of the Covenant confers citizenship on an individual who (1) was a citizen of the former TTPI (as defined in 7 FAM 1126.5-2) and who was domiciled in the NMI, the United States or any U.S. territory or possession on November 3, 1986 (Saipan time). Such applicants must provide the following evidence of citizenship: (See 7 FAM Exhibit 1126.5 Chart)*

  (1)  *Certified copy of his or her birth certificate. If a birth certificate is not on file he or she must submit a letter of no record from the CNMI clerk of court, plus a baptismal certificate or other secondary evidence (Note: Since many records were destroyed during World War II, most applicants born before 1950 do not have certified birth certificates or have delayed birth records); and*

  (2)  *Evidence of the TTPI citizenship of either parent. If the application and birth certificate show that one parent was born in the former TTPI, no other evidence is needed. Otherwise, the applicant must submit the parent's TTPI naturalization certificate or other evidence of the parent's TTPI citizenship.*

> **Note**: *Applications for persons born in the NMI who did not acquire citizenship under Section 301(a) of the Covenant should be adjudicated for possible acquisition under Section 301(b) or Section 301(c).*

## 7 FAM 1126.5-4  Applicants Claiming Under Section 301(b) of the Covenant

*(CT:CON-105;  06-01-2005)*

*Section 301(b) confers U.S. citizenship as of November 4, 1986 on a person who was: a citizen of the former TTPI (as defined in 7 FAM 1126.5-2) on November 3, 1986, domiciled continuously in the NMI from at least November 4, 1981 to November 3, 1986, and registered to vote, unless under age, in NMI elections before January 1, 1975. These applicants must*

*provide the following evidence of citizenship: (See 7 FAM Exhibit 1126.6 Chart)*

    *(1) A certified copy of his or her birth certificate. If a birth certificate is not on file, he or she must submit a letter of no record from the registrar of the applicant's country of birth, plus a baptismal certificate or other secondary evidence (Note: Since many records were destroyed during World War II, most applicants born before 1950 do not have certified birth certificates or have delayed birth records);*

    *(2) Evidence of the applicant's TTPI citizenship as of November 3, 1986. If the applicant was born in the TTPI, and the application and birth certificate show that one parent was born in the former TTPI, no other evidence is needed. Otherwise, the applicant must also provide evidence of either parent's TTPI citizenship. (Note: If the applicant was born outside the TTPI, and was 21 or older on November 3, 1986, he or she must also provide evidence that he or she became a permanent resident of the TTPI while under the age of 21.) If the applicant acquired TTPI citizenship through naturalization, he or she must provide the TTPI naturalization certificate;*

    *(3) Record of registration to vote in the NMI municipal or legislative election before January 1, 1975, unless the applicant was under age; and*

    *(4) Documentary evidence of continuous domicile in the NMI from November 4, 1981 through November 3, 1986. Evidence may include entry permits, passports, bank records, business licenses, NMI Social Security records, NMI tax records, children's birth or baptismal certificates, church records, Certificates of Identity, voting records, Trust Territory passports, Trust Territory census records, CNMI Immigration files, hospital or medical records, employment records, real property records car registrations, etc. Employment verification letters and affidavits must be supported by other documentary evidence of domicile. A temporary absence from the NMI does not break the "continuity" of domicile as long as there is evidence that the applicant intended to return to the NMI. Evidence of intent may include evidence of money transfers to the NMI and/or evidence of the residence of family members in the NMI.*

**NOTE:** The Barasi decision (see 7 FAM 1126.3(c)(3)) provides further guidance in defining continuous domicile.