Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

(and contemporaneous) statement of the actual time expended and the rates at which this time was billed; and (4) the United States was not "substantially justified" in its position. *Id.* at § 2412(d)(1)(B).

*2 Plaintiff's application here is sufficient to establish entitlement to recovery of attorneys' fees under EAJA. First, the remand of this case to the Commissioner for further proceedings makes the plaintiff a "prevailing party" for the purposes of EAJA. *See Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). Second, plaintiff is otherwise eligible to recover fees pursuant to EAJA -- i.e., he appears to have a net worth of less than $2,000,000. *See* Hearing Transcript of June 7, 1996 at 6 ("[Y]ou have a situation in terms where the claimant is receiving welfare benefits. He does not have access to high amounts of resources[.]"). Third, plaintiff's application includes a contemporaneous, itemized schedule, prepared by his attorneys, of the hours they expended and the rates they requested for his representation. *See* Affirmation of Charles Binder, dated September 30, 1996, Ex. A - C ("Binder Aff."). Fourth, plaintiff has alleged that the Commissioner was not substantially justified in denying his application for disability benefits. Binder Aff. ¶3.

Under these circumstances, the Commissioner then bears the burden of establishing that the agency's position was substantially justified, or that other special circumstances make an award of fees unjust. *See Green v. Bowen*, 877 F.2d 204, 207 (2d Cir. 1989)(holding that "[t]he burden rests on the government to show that its position was reasonable"). The "position" that must be "substantially justified" includes both the position of the Commissioner in denying the claim, as well as the position of the United States Attorney in litigating it -- although only the former is at issue here. 28 U.S.C. § 2412(d)(2)(D).

The Commissioner opposes plaintiff's application for fees on two, independent grounds: (1) the ALJ's decision below was substantially justified; or (2) other special circumstances make any award of fees to plaintiff unjust, or at least require a fifty-percent reduction in the amount of such an award. After reviewing the record in this case, I find that the ALJ's decision was not substantially justified, but that a 20% reduction in the amount of plaintiff's award is appropriate in light of the special circumstances of this case.

### A. Substantial Justification

The phrase "substantially justified" connotes something that is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Thus, to qualify as "substantially justified", a position must be "more than merely undeserving of sanctions for frivolousness; [for] that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Id.* at 566. Instead, a position justification is deemed substantial only "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2.

In the Social Security context, if evidence in the record weighs equally in favor and against the Commissioner's position, then the agency's position has often been deemed substantial, notwithstanding the fact that the matter was remanded for further administrative proceedings. *See, e.g., Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992)(holding that ALJ's failure to consider contrary evidence, or at least articulate that he had considered it, did not necessarily mean that agency's position lacked substantial justification, both because there was evidence to support the agency's position, and because a genuine dispute existed as to claimant's condition); *Pullen v. Bowen*, 820 F.2d 105, 109 (4th Cir. 1987)(holding that in close case reversing Secretary, where difficult judgments on conflicting and balanced evidence were required, position of the agency was substantially justified).

*3 Nonetheless, the fact that there is some evidence in the record that supports an ALJ's decision will not necessarily lead to a finding that the Commissioner's position was substantially justified. *See, e.g., Fulton v. Heckler*, 784 F.2d 348, 349 (10th Cir. 1986)(holding that Secretary improperly relied on deficient record, even though it contained some slight support for agency denial of benefits, and thus agency position was not substantially justified); *Luna v. Bowen*, 663 F. Supp.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

109, 111 (D. Colo. 1987)(holding that "fact that the Social Security Administration has *some evidence* as opposed to *no evidence* does not make the Secretary 'substantially justified[]'").

In this case, the Commissioner asserts that the ALJ's decision was substantially justified, but she does not identify the particular bases for such a conclusion. Because, as noted above, the Commissioner bears the burden of establishing that her position was substantially justified, conclusory assertions like these are rarely adequate to the task. See *Martin v. Heckler*, 754 F.2d 1262, 1265 (5th Cir. 1985)(holding that the Secretary's "conclusory assertion of substantial justification does not discharge her statutory burden"). A brief review of the record in this case further confirms that, although this is a somewhat close case, the Commissioner's position was not substantially justified.

The ALJ's decision denying plaintiff benefits was defective in essentially four respects: (1) he characterized plaintiff's past work differently than he had in an earlier decision, without explaining the reasons for changing plaintiff's work classification (from a "medium" to a "light" level of exertion); (2) he failed to assess the credibility of plaintiff's subjective complaints of pain in accordance with applicable requirements; (3) he neglected to question the plaintiff concerning a significant evidentiary gap (i.e., a lack of treatment records from the Hospital for Joint Diseases); and (4) he did not credit, and failed to explain adequately his reasons for not crediting, medical evidence submitted by plaintiff's treating physicians that supported plaintiff's claims of disability.[FN1]

> FN1. Plaintiff also suggests that the ALJ who authored this opinion was biased -- another basis for finding that the agency's position was not substantially justified. *See, e.g., Claasen v. Heckler*, 630 F. Supp. 322, 324 (D. Kan. 1986) (holding that agency position was not substantially justified, because ALJ's decision was "hastily formed, ill conceived, and prejudicially drawn," and that it could only be explained if the ALJ was bent on defeating claims to benefits rather than making an impartial decision). Yet, my decision to remand and directions to the Commissioner to reassign this matter to another ALJ reflected my feeling that, rather than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial. This would at least allay any concerns plaintiff might have respecting the impartial review of his claims -- even though I did not apprehend such bias in the earlier decisions.

Collectively, these deficiencies are more than sufficient to warrant a conclusion that the Commissioner's position was not substantially justified. *See, e.g., Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)(holding that ALJ's failure to ask about or consider an important vocational report and his failure to explain rejection of this probative evidence established that agency's position was not substantially justified); *Koss v. Sullivan*, 982 F.2d 1226, 1229 (8th Cir. 1993)(holding that ALJ's failure to obtain treating physician records, to otherwise adequately develop the record, or to evaluate complaints of pain under guidelines established by prior circuit opinions established that agency's position was not substantially justified); *Fraction v. Bowen*, 859 F.2d 574, 575 (8th Cir. 1988)(holding that although there was conflicting evidence in the record, ALJ's failure, contrary to clearly established circuit precedent, to evaluate all of the evidence concerning claimant's subjective complaints of non-exertional impairments and to otherwise fully develop the record indicated that agency's position was not substantially justified); *Reese v. Sullivan*, 925 F.2d 1395, 1397-98 (11th Cir. 1991)(holding that ALJ's failure to assess pain pursuant to clear Congressional and judicial directives, even though the result was supported by some factual evidence, rendered his decision, and thus position of agency, not substantially justified); *Murphy v. Bowen*, 691 F. Supp. 830, 833-34 (D.N.J. 1988)(holding that the ALJ's decision denying benefits without analytical comment or record reference to contradictory evidence was not substantially justified); *Dunn v. Heckler*, 614 F. Supp. 45, 48 (E.D.N.C. 1985)(holding that ALJ's failure properly to consider opinion of treating physician, to evaluate claimant's congestive heart failure in light of her other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

impairments, and to apply the medical-vocational grids indicated that agency's position was not substantially justified); *Love v. Heckler*, 588 F. Supp. 1346, 1348-49 (M.D. Ala. 1984)(holding that ALJ's decision -- which ignored medical reports of three physicians, misstated evidence supporting the finding of at least one physician, and failed to adhere to established circuit precedent -- was not substantially justified).

*B. Special Circumstances*

**\*4** Even if an agency's position was not substantially justified, an award of fees may be denied or reduced pursuant to EAJA if "special circumstances" would make an otherwise proper award "unjust." **28 U.S.C. § 2412(d)(1)(A)**. Although the statute does not **define** the key terms "**special circumstances**" and "unjust", the Second Circuit has held that equitable considerations should inform a court's decisions in this area. *See Oguachuba v. INS*, 706 F.2d 93, 98 (2d Cir. 1983)(holding that the "special circumstances" provision of EAJA "explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party"). Thus, notwithstanding the fact that "[a] party's shifting fortunes over the course of a lawsuit ... cannot impair its ultimate status as a 'prevailing party[,]'" if "the party in question did not substantially contribute to success on the merits, the justness of an attorney's fee award to that party is diminished." *United States v. 27.09 Acres of Land*, 43 F.3d 769, 773 & n.2 (2d Cir. 1994); *see also Sands v. Runyon*, 28 F.3d 1323, 1333 (2d Cir. 1994)(affirming reduction of fees for work on unsuccessful and meritless claims).

An unpublished opinion from the Northern District of Illinois, *Williams v. Bowen*, 1987 WL 10559 at *3-*4 (May 6, 1987), is somewhat instructive in cases such as this one. In *Williams,* the plaintiff had rejected the Commissioner's settlement proposal (i.e., to remand the matter to the agency for further development of the record) and was therefore responsible for continuation of the litigation. *Id.* at *3. Additionally, the *Williams'* plaintiff was represented by counsel at the administrative level, and thus he bore some responsibility for the inadequately developed administrative record. *Id.* at *4. Although this did not excuse the ALJ's own error in proceeding on an inadequate record, the plaintiff nonetheless was primarily and directly responsible for the need to remand the case, leading Judge Moran to hold that such "special circumstances" made an award of EAJA fees to the plaintiff "unjust." *Id.*

In this case, the Commissioner asserts that "special circumstances" -- namely, the plaintiff's failure to obtain and submit treatment records from the Hospital for Joint Diseases (to which he was referred by his doctor) -- make an award of fees "unjust," or at least require a fifty-percent reduction in the amount awarded. The Commissioner suggests that this was crucial evidence, and that this evidentiary gap figured prominently in my decision to remand the matter to the Commission for further development of the record. Moreover, the Commissioner notes that because plaintiff was represented by counsel at the earlier administrative proceedings, he should be held primarily responsible for failing to develop the record in this regard.

This case, however, is distinguishable from *Williams* in two important respects: first, there was not a settlement offer from the Commissioner; second, although plaintiff was represented by counsel at the administrative level, and thus he shares significant responsibility for the inadequately developed record, this evidentiary gap was not the only error requiring remand. [FN2] Thus, it would be inequitable to deny plaintiff recovery of attorneys' fees *in toto* simply because he was partially responsible for one of the errors necessitating a remand of the matter to the Commission.

> FN2. The ALJ also shares a modicum of responsibility for this evidentiary gap. The evidence at issue was highly relevant, and, indeed, it may have been the most expert opinion available. Thus, the ALJ should have at least asked why records from the Hospital for Joint Diseases had not been introduced into the record.

**\*5** Nonetheless, some reduction in the amount of plaintiff's award is appropriate in light of plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)  
(Cite as: Not Reported in F.Supp.)

Page 5

proportionate responsibility for the insufficiently developed administrative record. The Commissioner suggests that this reduction should be on the order of fifty percent. Although the Commissioner does not articulate why a fifty percent reduction (as opposed to a lesser or greater one) is appropriate here, her proposal seems to represent a "split-the-difference" approach -- i.e., plaintiff advocates a full award, the Commissioner advocates no award, and thus I should split the parties' differences by granting plaintiff half the award to which he would otherwise be entitled. However, after reviewing the totality of the circumstances in this case, and attempting to apportion blame as equitably as practicable, I find that a twenty-percent reduction in plaintiff's award is more appropriate.

### C. The Rate at Which Fees Can Be Charged

Plaintiff suggests that the statutory cap of $75.00 per hour for attorneys' fees should be adjusted upward by an appropriate factor for cost-of-living increases since enactment of the cap in 1981, and its subsequent reauthorization in 1985. Specifically, plaintiff suggests that the cap should be adjusted upward to $134.70 per hour to reflect the approximately eighty-percent increase in the Consumer Price Index ("CPI") for the New York metropolitan area since 1981. See Binder Aff. ¶9. However, the propriety of using such a local cost-of-living adjustment remains unclear.

The Second Circuit has acknowledged that fees should be adjusted for "inflation" in appropriate circumstances, but it has not specified whether a national or local cost-of-living adjustment should be used. See Harris v. Sullivan, 968 F.2d 263, 265-66 (2d Cir. 1992)(holding that "[t]he district court should apply the $75 statutory cap for hourly rates and adjust the same for general inflation since October 1, 1981"). Nonetheless, Judge Haight, among others, has questioned whether the use of a local adjustment is appropriate in light of Congress' prescription of a national, uniform cap on attorneys' fees. See Wedra v. Thomas, 623 F. Supp. 272, 278 (S.D.N.Y. 1985)(holding that plaintiff failed to submit evidence indicating that New York adjustment was higher than other localities, and stating that "even if he had, I am not certain that such a geographical exception is permitted under the statute. Surely Congress was aware in enacting the attorneys' fees provisions of the wide disparity in fee rates between urban and rural areas; between the Northeast and the Midwest, etc.; yet Congress chose to set one uniform rate to be applied nationwide."); see also Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two)*, 56 La. Law Rev. 1, 128-45 (1995)(suggesting that use of a national cost adjustment -- i.e., the CPI, All Regions -- is more consistent with Congress's original intent in enacting a national, uniform cap for attorneys' fees and is more reliable than other regional or metropolitan indices that might be used).

*6 Congress's recent amendment of EAJA, which raised the national cap on hourly fees by approximately sixty-seven percent, is instructive on this issue. See Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 232(b), 110 Stat. 847, 863 (1996)(codified at 28 U.S.C. § 2412(d)(2)(A)) (raising cap on hourly rates from $75.00 to $125.00 per hour). While this amendment is not retroactive, and thus the new cap is not binding in this case, it at least suggests what an appropriate cost-of-living adjustment should be in these circumstances. Indeed, the congressional calculation may well be a better approximation than the CPI figures compiled by the Bureau of Labor Statistics -- the substantial inaccuracy of which has recently been the subject of criticism. See, e.g., Michael J. Boskin, *Prisoners of Faulty Statistics*, Wall St. J., Dec. 5, 1996, at A20 (summarizing findings of Boskin Commission that CPI measurement overstated inflation by approximately 1.1 percentage points per year). Using the $125.00 figure also preserves national uniformity (at least in the short term) and ensures that those who bring claims after the new cap becomes effective do not receive less per hour than those who brought their claims before it became effective -- a result which, absent the amendment, could only be explained by an intervening period of deflation.

### CONCLUSION

In view of the preceding, I find that plaintiff is entitled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. 
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.) 
**(Cite as: Not Reported in F.Supp.)**

Page 6

to an award of $3275.00 for attorneys' fees incurred in conjunction with this case. This amount is arrived at by multiplying 32.75 hours times $125.00 per hour, and then reducing that sum ($4093.75) by twenty percent to take into account plaintiff's proportionate responsibility for the need to remand this matter.

SO ORDERED.

E.D.N.Y.,1997. 
Ortiz v. Chater 
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:95cv03126 (Docket) (Aug. 04, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

11 Vet.App. 497                                                                                         Page 1
11 Vet.App. 497
(Cite as: 11 Vet.App. 497)

H

United States Court of Veterans Appeals.
Gary M. CHESSER, Appellant,
v.
Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.
No. 96-688.

Argued June 2, 1998.
Decided Oct. 14, 1998.

Veteran appealed decision of the Board of Veterans' Appeals (BVA) that had found no clear and unmistakable error (CUE) in a regional office (RO) decision. The parties subsequently filed a joint motion for remand of the CUE issue and to dismiss the appeal which was granted. Veteran then filed an application for attorney fees and expenses under the Equal Access to Justice Act (EAJA). The Court of Veterans Appeals, Steinberg, J., held that: (1) in regard to an attorney fee request under the EAJA, there is no assumption that an appellant's assertion of hours expended is reasonable unless the Secretary of Veterans Affairs persuades the Court to the contrary; (2) even assuming that EAJA special-circumstances affirmative defense is available to bar some but not all EAJA fees sought, any reduction of fees for fees sought was best decided under the reasonableness standard where the Court is accorded considerable discretion in the award of reasonable fees; and (3) in light of the fact that some of the attorney fee litigation in the case was occasioned by a lack of detail in original EAJA application, the Court would disallow 50 percent of the time claimed for preparing pleading that corrected misstatement concerning the size of veteran's claims file and for preparing a supplemental itemization ordered by the Court.

Application granted in part and denied in part.

West Headnotes

[1] Armed Services 34 ⟶144

34 Armed Services
   34III Veterans' Benefits
      34III(B) Administrative Proceedings
         34k144 k. Fees of Agents and Attorneys. Most Cited Cases
It is incumbent upon the Court of Veterans Appeals to permit an award only of reasonable attorney fees; nevertheless, that judicial obligation does not obviate the need for the opposing party in the case to raise timely opposition to the application and argument in favor of fee reduction.

[2] United States 393 ⟶147(20)

393 United States
   393IX Actions
      393k147 Costs
         393k147(11) Nature of Action or Proceeding
            393k147(20) k. Armed Services. Most Cited Cases
In regard to an attorney fee request under the Equal Access to Justice Act (EAJA), there is no assumption that an appellant's assertion of hours expended is reasonable unless the Secretary of Veterans Affairs persuades the Court of Veterans Appeals to the contrary. 28 U.S.C.A. § 2412(d).

[3] United States 393 ⟶147(6)

393 United States
   393IX Actions
      393k147 Costs
         393k147(6) k. Application; Form, Requisites, and Time. Most Cited Cases
Appellant's sworn affidavit setting out hours expended and tasks that those hours were expended upon provides the uncontradicted benchmark for the "hours reasonably expended" that, multiplied by the appropriate hourly rate, will generally yield the attorney fee to be awarded under the Equal Access to Justice Act (EAJA), where the hours claimed are not (1) unreasonable on their face, (2) otherwise contraindicated by the *Hensley* factors for measuring reasonableness, or (3) persuasively opposed by the Secretary of Veteran's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Vet.App. 497                                                                                               Page 2
11 Vet.App. 497
(Cite as: 11 Vet.App. 497)

Affairs. 28 U.S.C.A. § 2412(d).

**[4] United States 393 €⇒147(8.1)**

393 United States
   393IX Actions
      393k147 Costs
         393k147(8) Grounds
           393k147(8.1) k. In General. Most Cited Cases
"Special circumstances" precluding an award of attorney fees under the Equal Access to Justice Act (EAJA) is an affirmative defense as to which the government bears the burden of raising and demonstrating. 28 U.S.C.A. § 2412(d)(1)(A).

**[5] United States 393 €⇒147(8.1)**

393 United States
   393IX Actions
      393k147 Costs
         393k147(8) Grounds
           393k147(8.1) k. In General. Most Cited Cases
Even assuming that special-circumstances affirmative defense of the Equal Access to Justice Act (EAJA) is available to bar some but not all EAJA fees sought, any reduction of fees for fees sought was best decided under the reasonableness standard where the Court of Veterans Appeals is accorded considerable discretion in the award of reasonable fees. 28 U.S.C.A. § 2412(d)(1)(A).

**[6] United States 393 €⇒147(4)**

393 United States
   393IX Actions
      393k147 Costs
         393k147(3) Items and Amount
           393k147(4) k. Attorney Fees. Most Cited Cases
Hours claimed for general research into Title 38 of the United States Code and Title 38 of the Code of Federal Regulations was expected background research for which attorney will generally not bill a client and therefore they would be disallowed in attorney fee request under the Equal Access to Justice Act (EAJA).

28 U.S.C.A. § 2412(d).

**[7] United States 393 €⇒147(4)**

393 United States
   393IX Actions
      393k147 Costs
         393k147(3) Items and Amount
           393k147(4) k. Attorney Fees. Most Cited Cases
In light of the fact that some of the attorney fee litigation in the case was occasioned by a lack of detail in appellant's original Equal Access to Justice Act (EAJA) application, the Court of Veterans Appeals would disallow 50 percent of the time claimed for preparing appellant's pleading that corrected a misstatement concerning the size of appellant's claims file and for preparing a supplemental itemization ordered by the Court. 28 U.S.C.A. § 2412(d).

**\*498** Michael E. Wildhaber, with whom Peter J. Wymes was on pleadings, for appellant.
Ron Garvin, Assistant General Counsel, with whom John H. Thompson, Acting General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Todd A. Sinkins were on pleadings, for appellee.
Barton F. Stichman for National Veterans Legal Services Program as amicus curiae.
Kenneth M. Carpenter for National Organization of Veterans' Advocates, Inc., as amicus curiae.

Before IVERS, STEINBERG, and GREENE, Judges.
STEINBERG, Judge:
The appellant, Vietnam combat veteran Gary M. Chesser, appealed through pro bono counsel Peter J. Wymes, a February 27, 1996, decision of the Board of Veterans' Appeals (Board or BVA) that had found no clear and unmistakable error (CUE) (under 38 C.F.R. § 3.105(a)) in a November 1969 Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision. On July 21, 1997, the parties filed a joint motion for remand of the CUE issue and to dismiss the appeal as to the remaining issues; the Clerk of the Court granted the joint motion in an unpublished order on July 29, 1997. The appellant then filed a timely application for attorney fees and expenses under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Vet.App. 497                                                                         Page 3
11 Vet.App. 497
(Cite as: 11 Vet.App. 497)

the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). He has since filed two supplemental motions to amend the application. For the reasons that follow, the Court will grant the amended application in part and deny it in part.

### I. Background

On August 11, 1997, the appellant filed an application for attorney fees and expenses totaling $15,619.99 under the EAJA; the appellant claimed 119.5 hours of attorney fees at $128.55 per hour ($15,361.73) and $258.26 in expenses. On September 9, 1997, the Secretary filed a motion for an extension of time to file his response to the appellant's EAJA application. On September 11, 1997, the appellant filed a motion that sought to have his EAJA application considered as unopposed, and on September 12, 1997, he filed an opposition to the Secretary's motion for an extension of time. On September 22, 1997, the Court granted the Secretary's motion and held in abeyance the appellant's motion to have his application considered as unopposed. The Secretary filed his response on October 24, 1997. On December 5, 1997, the Court granted a motion by the National Organization of Veterans' Advocates, Inc. *499 (NOVA), to file a brief as amicus curiae. The appellant filed his reply to the Secretary's response on January 9, 1998, and on January 20, 1998, the Court granted a motion by the National Veterans Legal Services Program (NVLSP) to file a brief as amicus curiae. NOVA's brief was filed on January 23, 1998, and NVLSP's brief was filed on February 3, 1998. On April 22, 1998, Michael E. Wildhaber, Esq., entered an appearance on behalf of the appellant. On June 2, 1998, the Court held oral argument on the EAJA application.

Subsequent to oral argument, the Court concluded that additional pleadings were needed. On June 18, 1998, the Court ordered the appellant to file a supplement to his EAJA application that more particularly itemized the hours expended on particular tasks and explained whether, as an exercise in billing judgment, any reduction had been made in the hours claimed (see Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Chesser v. West, 11 Vet.App. 247, 249 (1998). The Court also sought any supplement to the EAJA application seeking fees for work performed after the filing of the initial application, and permitted a reply by the Secretary. Ibid.

The appellant filed his response on July 2, 1998. In his response, he stated that the total number of hours expended by his attorney was 129.5 and that 10 hours had been eliminated, as an exercise in billing judgment, from the original EAJA application. The appellant also eliminated an additional 14.4 hours in his response, bringing the total number of hours claimed to 105.1. The appellant thus sought $13,510.61 in EAJA fees at this point. On July 17, 1998, he filed a supplement to his EAJA application and identified an additional 160.85 hours expended by attorney Wymes and 52.75 hours expended by attorney Wildhaber (totaling 213.6 hours) on EAJA matters subsequent to the filing of the initial application. As an exercise of billing judgment, that total was reduced by approximately 50 hours, or about 23 percent, to 163.825, at a rate of $129.98 per hour, for a total of $21,293.97 in attorney fees related to the litigation over the EAJA application. The appellant also sought an additional $689.56 in expenses. The total EAJA fees claimed is thus $34,804.58, and the total claimed for expenses is $947.82. On August 3, 1998, the Secretary filed a surresponse to the appellant's response and supplements; in his surresponse, the Secretary argues that 19.14 of the hours of attorney fees claimed by the appellant for researching issues "unrelated" to those on appeal were expended in unproductive legal research and that the fees for fees should be reduced by 50% due to special circumstances. The appellant filed a motion seeking an opportunity to respond to the Secretary's surresponse, and, on August 6, 1998, the Court denied that motion.

### II. Analysis

This Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F) as amended by section 506 of the Federal Courts Administration Act of 1992, Pub.L. No. 102-572, § 506, 106 Stat. 4506, 4513 (1992). The appellant's August 11, 1997, EAJA application was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Vet.App. 497                                                                                      Page 4
11 Vet.App. 497
(Cite as: 11 Vet.App. 497)

filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B) and has satisfied any jurisdictional content requirements that apply thereunder, because the application contained the following: (1) A showing that, by virtue of the Court's remand, he is a "prevailing party" within the meaning of the EAJA (28 U.S.C. § 2412(d)(2)(B); *Stillwell v. Brown*, 6 Vet.App. 291, 300-01 (1994)); (2) a showing, by attaching a declaration stating that at the time that his appeal was filed his net worth was less than $2,000,000, so that he is a party eligible for an award under the EAJA (28 U.S.C. § 2412(d)(2)(B)); (3) an assertion that the position of the Secretary was not substantially justified (28 U.S.C. § 2412(d)(1)(A)); and (4) an itemized statement of the fees sought (now totaling $34,804.58 in fees and $947.82 in expenses) supported by affidavits from the appellant's counsels. *See Bazalo v. Brown*, 9 Vet.App. 304, 310 (1996) (en banc), *rev'd sub nom. Bazalo v. West*, 150 F.3d 1380, 1384 (Fed.Cir.1998) (concluding that showing of net worth not jurisdictional requirement).

*500 The Secretary's response specifically states that he does not contest the following: (1) That the appellant is a "prevailing party"; (2) that the appellant is a party eligible for an award; and (3) that the Secretary's position was not substantially justified. Response at 2. Further, he asserts that "[t]here are no 'special circumstances' as defined by 28 U.S.C. § 2412(d)(1)(A)" that would make an EAJA award unjust in this case as to the fees sought for the merits, *see, e.g., Doria v. Brown*, 8 Vet.App. 157, 162-63 (1995). Response at 2. The Secretary does not contest the hourly amount sought for the award of EAJA fees. Response at 11. However, he later asserts, responding to the appellant's supplemental itemization pursuant to this Court's June 18, 1998 order, that there are special circumstances that make an EAJA award unjust, in part, as to the fees sought for pursuing the EAJA application [hereinafter fees for fees]. *See* Surreponse at 3. As to the fees sought for the litigation on the merits, the Secretary contests primarily the reasonableness of the fees sought and the allocation of the burden in showing or contesting such reasonableness. Specifically, he argues that the Court is required to address what constitutes a reasonable fee in the instant case, that the burden is upon the appellant to show that the claimed hours expended were reasonable, and that the appellant has failed to satisfy this burden. The Secretary appended 39 exhibits to his principal response to the EAJA application; the exhibits consist primarily of EAJA applications to this Court in other cases, showing the itemization of hours claimed for particular tasks. The Secretary uses these exhibits to support his argument that the number of hours expended on similar tasks in the instant case is unreasonable. In his surresponse to the appellant's response to the Court's June 18, 1998, order, the Secretary seeks to exclude as unreasonable fees for 19.14 hours claimed by the appellant for researching issues "unrelated" to those on appeal. As to the fees for fees, he argues that special circumstances warrant a 50% reduction in those fees.

### A. *Court's Obligation and Appellant's "Burden"*

The Court will address first the Secretary's argument that in individual cases the Court has "eschewed" its duty to review the reasonableness of fees sought before the Court and had done so both by limiting its review of reasonableness and by dismissing the Secretary's argument that a given fee was unreasonable without substantial explanation. Br. at 8 (relying on Court's opinions in *Moore (Craig) v. Gober*, 10 Vet.App. 436, 441-42 (1997); *Ussery v. Brown*, 10 Vet.App. 51, 54 (1997); and *Sandoval v. Brown*, 9 Vet.App. 177, 181 (1996)). He argues, in sum, that the Court has erroneously placed the burden on the Secretary to rebut an attorney's itemization of hours that the Court has presumed reasonable. We find the Secretary's position to be without merit.

In *Ussery*, the Court stated: "Once it is determined that a claimant is entitled to an EAJA award, the Court still must determine what is a 'reasonable' fee". *Ussery*, 10 Vet.App. at 53. The Court found the following factors to be appropriate for consideration in determining the reasonableness of a fee request:

[T]he Court must look to "the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate." *Elcyzyn [ v. Brown*, 7 Vet.App. 170, 177 (1994) ] (citing *Hensley [*, 461 U.S. at 433, 103 S.Ct. 1933] ). In determining the number of hours which were "reasonably spent," the Court may

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Vet.App. 497
11 Vet.App. 497
(Cite as: 11 Vet.App. 497)

Page 5

consider a number of factors, including whether the work performed was duplicative, if an attorney takes extra time due to inexperience, or if an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-attorneys. See _Sandoval v. Brown_, 9 Vet.App. 177 (1996). The Court "may properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts." _Vidal v. Brown_, 8 Vet.App. 488, 493 (1996) (citing _Jordan v. U.S. Department of Justice_, 691 F.2d 514, 518 (D.C.Cir.1982)). Finally, the Court may consider whether [there are] additional factors derived from the "results obtained" which may or may not justify an adjustment: "First, did the plaintiff fail to prevail on claims that were unrelated to the *501 claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" _Elcyzyn_, 7 Vet.App. at 171 (citing _Hensley_, 461 U.S. at 434, 103 S.Ct. 1933).

_Ussery_, 10 Vet.App. at 53; see also _Hensley_, 461 U.S. at 430 n. 3, 103 S.Ct. 1933 (identifying twelve factors from _Johnson v. Georgia Highway Express, Inc._, 488 F.2d 714 (5th Cir.1974), to be used in assessing reasonableness of fees sought under 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Award Act of 1976); see also _Perry v. West_, 11 Vet.App. 319, 327-328 (1998) (quoting _Ussery_, 10 Vet.App. at 53). The Court in _Ussery_ explicitly noted the Court's "responsibility to consider the reasonableness of hours expended" and did not *decline* to consider reasonableness or "eschew" its responsibility; the Court stated that the Secretary's unsupported allegation of unreasonableness did not warrant a reduction and specifically concluded that "the record does not reveal that there are any additional factors which would justify a reduction in fees based upon the 'results obtained' ". _Ussery_, 10 Vet.App. at 54. Hence, the Secretary has apparently misconstrued a rejection of his unsupported attack upon the reasonableness of the fees sought in _Ussery_ as a holding that in the absence of a supported attack on reasonableness the Court will look no further. That is contradicted by the plain language of _Ussery_. Moreover, very recently in _Perry_, the Court reemphasized that the Court, "acting in the same capacity as a U.S. District Court, has discretion to order a reduction in fees when the Court finds it appropriate, although we do not suggest that the Court is required to review for reasonableness in the absence of the Secretary's presenting evidence and a standard." _Perry_, 11 Vet.App. at 329.

Additionally, the Secretary's objection to the Court's decisions in _Moore_ and _Sandoval_ appears misplaced. In the _Moore_ language to which the Secretary objects, the Court, after ordering a revised accounting by the appellant, stated: "If the Secretary files objections, the parties will be expected to attempt to resolve any differences, and a conference pursuant to Rule 33 of this Court's Rules of Practice and Procedure would be available to assist the parties in that endeavor." _Moore_, 10 Vet.App. at 442. The Court's opinion in _Moore_ did not abjure review of the reasonableness of the fees sought in the accounting before it, and it did not decline subsequent review; it merely instructed the parties to settle the matter if possible. Such settlement by the parties can be validated by the Court without additional review. See U.S. Vet.App. R. 45(h) (amended by Misc. No. 3-98, (Apr. 30, 1998)) (allowing Clerk of the Court to act on EAJA application "when the Secretary does not contest the application"). Similarly, in _Sandoval_, the Court had specifically held "the 85 hours claimed by the appellant to be reasonable" before adding that the fact that the Secretary's assertions regarding excessive time "are mere allegations unsupported by evidence, is alone dispositive". _Sandoval_, 9 Vet.App. at 181.

[1][2] In short, the Secretary appears to mistake the Court's objections-in _Ussery, Moore_, and _Sandoval_, all *supra*-to the kind and quality of the bases for the Secretary's opposition to the reasonableness of claimed fees, for a de facto finding that those fees are reasonable or a shifting of a burden to the Secretary. See also _Vidal, supra_ (rejecting Secretary's attempt to make comparisons with Social Security cases and other cases before the Court). However, as _Ussery_ makes clear, it *is* incumbent upon the Court to permit an award only of reasonable fees. Nevertheless, that judicial obligation does not obviate the need for the *opposing party in the case* to raise timely opposition to the application and argument in favor of reduction. Likewise, we do not adopt the position of the appellant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.