11 Vet.App. 497
11 Vet.App. 497
**(Cite as: 11 Vet.App. 497)**

and amicus NOVA that as a general proposition under the EAJA the appellant's assertion of hours expended is assumed to be reasonable unless the Secretary persuades the Court to the contrary.  Reply at 15; NOVA Br. at 6.  We do not find that the cases cited support any such rule.  Rather, we strike a middle ground.

[3] The Court has wide discretion in the award of attorney fees under the EAJA.  *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933; **\*502** *Chiu v. United States,* 948 F.2d 711, 713 (Fed.Cir.1991); *Vidal, supra.*  Within that discretion, where the hours claimed are not (1) unreasonable on their face, (2) otherwise contraindicated by the factors itemized in *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933, or *Ussery, supra,* for measuring reasonableness, or (3) persuasively opposed by the Secretary, the appellant's sworn affidavit-setting out hours expended and tasks that those hours were expended upon, *see* American Bar Association Model Rules of Professional Conduct [hereinafter Model Rules] 3.3(a)(1) (lawyer shall not "knowingly ... make a false statement of material fact or law to a tribunal")-provides the uncontradicted benchmark for the "hours reasonably expended" that, multiplied by the appropriate hourly rate, will generally yield the fee to be awarded.  *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *see also Vidal,* 8 Vet.App. at 488 ("neither the Secretary nor the record provides any basis for the Court to conclude that the total amount of requested attorney fees in this case is 'grossly inflated' ").  In such a case, the appellant has carried "the burden of establishing entitlement to an award and [of] documenting the appropriate hours expended and hourly rates".  *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933.

### B. Special Circumstances

[4] A court may not make an EAJA award to a party if it "finds ... that special circumstances make an award unjust".  **28 U.S.C. § 2412(d)(1)(A).**  "Special circumstances" is an affirmative defense as to which the government bears the burden of raising and demonstrating that such special circumstances militate against an EAJA award.  *See Perry,* 11 Vet.App. at 325; *Doria,* 8 Vet.App. at 163.  *Doria* noted two species of special circumstances: "[S]ituations where the government proffers novel but credible extensions and interpretations of the law; and ... situations 'where equitable considerations dictate an award should not be made' ".  *Id.* at 162.  In *Perry,* the Court noted that it had "not precisely articulated what is contemplated by 'equitable considerations' dictating that an award should not be made, but ... seem[ed] to have adopted a **definition** of the equitable-considerations prong of '**special circumstances**' that predominantly relies upon 'unclean hands' ".  *Perry, supra; see also Locher v. Brown,* 9 Vet.App. 535, 540 (1996); *Brinker v. Guiffrida,* 798 F.2d 661, 667-68 (3d Cir.1986); *Oguachuba v. INS,* 706 F.2d 93, 99 (2d Cir.1983).

[5] In the instant matter, the Secretary specifically contends that the appellant has "unclean hands" because the lack of specificity in his initial itemization of hours expended prompted the litigation over the fee agreement and because he had initially contended that the veteran's claims file was larger than he now concedes.  *Compare* Appellant's January 9, 1998, Reply to Appellee's Response to EAJA Application at 21 (stating that claims file "consisted of three unruly stacks of documents, each 3" to 4" thick") *with* Appellant's February 10, 1998, Answer Regarding the Size of Appellant's Claims File at 1 (conceding that file amounted to 350 to 400 pages).  However, as we said in *Perry,* "[e]ven assuming, without deciding, that a special-circumstances affirmative defense ('that special circumstances make *an award* unjust', 28 U.S.C. § 2412(d)(1)(A)) is available to bar some but not all EAJA fees sought," *Perry,* 11 Vet.App. at 326, the Court concludes again that any reduction of the fees for fees sought is best decided under the reasonableness standard-where the Secretary's concerns are equally applicable-and where the Court is accorded considerable discretion in the award of reasonable fees.  *See Perry,* 11 Vet.App. at 329; *Elcyzyn,* 7 Vet.App. at 177 ("court has considerable 'discretion' and 'flexibility' in determining 'the amount of the fee award' ") (quoting *Commissioner, INS v. Jean,* 496 U.S. 154, 160-61, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)); *see also Hensley, Chiu,* and *Vidal,* all *supra.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Vet.App. 497                                                                    Page 7
11 Vet.App. 497
**(Cite as: 11 Vet.App. 497)**

### C. Reasonableness of Fees

As outlined in part II.A., above, once the Court has determined that *some* EAJA fees are to be awarded-as is uncontested here-it must then determine what constitutes a "reasonable" fee in the case. *See* 28 U.S.C. § 2412(d)(2) (" 'fees and other expenses' includes ... reasonable attorney fees"); *Ussery,* 10 Vet.App. at 53.

### *503 1. Reasonableness of Fees for Merits Work

As to the fees for work on the merits, the Secretary argues, in sum, that the case lacked complexity, that there is a well-established body of law on the CUE issue that occasioned the remand, that the quantity of necessary work was minimal, that the appellant's attorney's work on the joint motion was ministerial or nonsubstantive, and that all these factors combine to make a complete muddle of the claimed fees unreasonable. Response at 14. Additionally, the Secretary objects specifically to the 19.14 hours partly claimed for an analysis of the case prepared by a representative of the Veterans Pro Bono Program (1 hour) and partly claimed for researching the law relating to the duty to assist (6.67 hours); to the *Bell v. Derwinski,* 2 Vet.App. 611 (1992), duty to include certain documents in the record (1.17 hours); to new and material evidence (0.8 hours); to reduction in disability compensation ratings (4 hours); and to title 38 of United States Code and title 38 of the Code of Federal Regulations generally (5.5 hours). Surresponse at 7, 9-10.

In his principal response, the Secretary-on the basis of the exhibits demonstrating EAJA fees sought in other applications in this Court-argues for reductions in the hours claimed by the appellant. The Court appreciates that the Secretary is attempting to answer this Court's admonition in *Ussery* that "[u]nsupported allegations of excessive time expended are insufficient to justify a reduction in hours", *Ussery* 10 Vet.App. at 54, by supporting his opposition to the hours claimed by the appellant with comparisons to other EAJA applications submitted here. In *Vidal,* the Court concluded that, in assessing the reasonableness of the number of hours

claimed in an EAJA application, "each case stands on its own evaluation and is not easily comparable with any other case". *Vidal,* 8 Vet.App. at 493. Although the Court acknowledges that such a comparison is not impossible-*Vidal* stated only that cases were not "easily comparable", *ibid.; see also Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933 (listing "awards in similar cases" as one factor to be considered in determining award of attorney fees under 42 U.S.C. § 1988)-we do not find that the selection of EAJA applications, which the Secretary states, but the appellant and amici strongly contest (Reply at 25-30; NOVA Br. at 7-9; NVLSP Br. at 4-8), were "randomly[ ]drawn" (Secretary's Response at 17) or are sufficiently "similar" to provide useful comparison in this case. The appellant and the amici point out, for example, that most of the cases involve counsel experienced in veteran's law (the Court notes that in approximately 15 cases the counsel's professional work is devoted or substantially devoted to litigation in this Court); and that there is no evidence to show that the sample is statistically significant or randomly selected or that the chosen cases are similar in size, scope, and complexity to the instant case. Reply at 26-27, exhibit 3; NOVA Br. at 7-9; NVLSP Br. at 5-6. Moreover, we suspect that virtually any effort at "sampling" will be contested by counsel for an appellant and the amici here and will tend to produce the "second major litigation" over fees for fees that the Supreme Court cautioned against in *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. There is also a risk that the development of benchmarks and guidelines for certain types of cases could be reviewed as minimums or entitlements.

Upon review of the hours claimed by the appellant for work performed on the merits-and in light of the additional reductions made as an exercise in billing judgment by the appellant's counsel-the Court finds the hours claimed to be reasonable except for a portion of those claimed for research. As to those hours, the Court agrees in part with the Secretary that not all of the time claimed for researching the law related to the duty to assist (6.67 hours), to the *Bell* duty to include certain documents in the record (1.17 hours), to new and material evidence (0.8 hours), and to reduction in ratings (4 hours) is reasonable in light of the fact that those subjects are unconnected to the subject matter of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Vet.App. 497
11 Vet.App. 497
**(Cite as: 11 Vet.App. 497)**

Page 8

the remand of the appellant's CUE claim (ordered for the purpose of the Board's addressing all the evidence of record and providing an adequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1)). *See Perry,* 11 Vet.App. at 329-330 (reduction of hours warranted where not all hours claimed **\*504** were expended solely on preparation of joint motion). However, the Court is unwilling to conclude that at least *some* general research in these areas was not warranted in light of the numerous issues identified in the screening memorandum prepared by the Veterans Pro Bono Consortium Program as counsel-for-the-appellant's introduction to the case. *See* Appellant's Reply at 10-12; *id.* at Exhibit 1. Counsel for the appellant had a responsibility to examine those issues and satisfy himself that the BVA decision did not contain prejudicial error beyond that which the Secretary was offering to concede by way of a joint motion. *See* Model Rules 1.1, 1.3 (requiring counsel to provide diligent and competent representation on behalf of client); *Jaffee v. Redmond,* 142 F.3d 409, 414, 416-17 (7th Cir.1998) ("time reasonably spent on an unsuccessful argument in support of a successful claim" is compensable, in part because to deny fees for "zealous advocacy that was appropriately provided ... would be at odds with the norms of professional responsibility"). The Court will thus reduce the 12.64 hours claimed for the above-itemized research by one-third, resulting in a reduction in the total hours to be awarded of 4.21.

[6] The 5.5 hours claimed for general research into title 38 of the United States Code and title 38 of the Code of Federal Regulations is expected background research for which an attorney will generally not bill a client and therefore will be disallowed. *See Ramos v. Lamm,* 713 F.2d 546, 553-54 (10th Cir.1983); *id.* at 554 n. 3 ("[i]f the inexperience of counsel requires the unusually large number of hours, the adversary should not be required to pay for more than the normal time the task should have required"). In contrast, the one hour (which the Secretary challenges) claimed for analyzing case briefs prepared by a representative of the Veterans Pro Bono Program is reasonable and consistent with the attorney's duty to provide zealous representation. *See Jaffee, supra.* The Secretary's arguments that the appellant's attorney did not make a major contribution to the

preparation of the joint motion for remand echos arguments pressed by the Secretary in *Perry.* There the Court, in making clear that it was not the function of counsel for an appellant merely to rubber-stamp the work of VA counsel or to restrict his or her examination to those issues that VA counsel considered relevant, stated the following: "[S]ome time subsequent to the filing of that remand motion could have justifiably been devoted to the appellant's counsel's reviewing that motion, determining the propriety of accepting it and the extent to which it supplied complete relief, communicating about these matters with counsel for the Secretary, and preparing an appropriate pleading in response." *Perry,* 11 Vet.App. at 328.

Thus, of the 105.1 hours claimed by the appellant for work on the merits, and including 3 hours for preparation of the original EAJA application, the Court will allow 95.39.

### *2. Fees for Work on EAJA Application and Litigation*

[7] The Secretary objects strenuously to the number of hours claimed by the appellant for litigation over the EAJA application itself, arguing that that litigation was largely occasioned by deficiencies in his initial itemization of hours expended and representations regarding the size of the record on appeal and that, therefore, the Court should allow only half of the 163.825 hours claimed for that work. The Court agrees with the Secretary that some of the work expended in pursuit of the EAJA application was occasioned by problems in the appellant's EAJA pleadings and that these problems protracted the litigation. However, the Court notes that the insufficiency of the itemization of hours expended was *not* part of the Secretary's original opposition to the EAJA application-which focused upon the lack of complexity in the case, the contribution of the appellant's counsel to the joint motion, the size of the record, and the use of other EAJA applications for comparison, Secretary's Response at 15-20-and was first raised by this Court at oral argument. In short, the bulk of this litigation was *not* occasioned by any failure on the appellant's part but, rather, by the Secretary's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Vet.App. 497                                                                Page 9
11 Vet.App. 497
**(Cite as: 11 Vet.App. 497)**

decision to use this case to mount a major challenge to an EAJA application and to attempt to obtain what the Secretary believed was a necessary modification in the law applicable to determining the type and amount of hours that are compensable*505 under the EAJA. Nonetheless, in light of the fact that *some* of the litigation was occasioned by a lack of detail in the appellant's original EAJA application, the Court will disallow fifty percent of the time claimed (24.5 hours) for preparing the appellant's February 10, 1998, pleading that corrected the misstatement concerning the size of the appellant's claims file (3.5 hours on February 9 and 10, 1998) and for preparing the supplemental itemization ordered by the Court on June 18, 1998 (21 hours from June 23, 1998, to June 30, 1998)-a reduction totaling 12.25 hours. The Court believes that some of those hours would have been compensable had they been expended to provide greater detail in the original application. Of the 163.825 hours claimed by the appellant for EAJA work, the Court finds 151.575 (163.825 minus 12.25) hours to be reasonable.

### 3. Fees for Expenses

The Secretary does not contest any costs and expenses sought by the appellant. *See Vidal,* 8 Vet.App. at 495 (Secretary did not contest amount of costs and expenses and that amount was awarded); *Camphor v. Brown,* 8 Vet.App. 272, 278 (1995) (same), *recons. denied,* 8 Vet.App. 483 (1996). The Court thus allows the $947.82 sought for costs and expenses.

### 4. Total Fees and Expenses Awarded

Thus, of the 105.1 hours sought by the appellant for work on the merits, including the original EAJA application, the Court finds 95.39 to be reasonable and awards $12,262.38. Of the 163.825 hours sought for EAJA work, the Court finds 151.575 to be reasonable and awards $19,701.72. The Court has allowed the $947.82 sought for costs and expenses.

### III. Conclusion

Upon consideration of the foregoing analysis and the pleadings of the parties, the Court grants the appellant's EAJA application in the reduced amount for fees and expenses of $32,911.92, which reflects the reductions of approximately 32 hours and $4,100 itemized above. The appellant's September 11, 1997, motion to have his EAJA application considered unopposed is dismissed as moot.

The Court is grateful to the amici and the parties for all their assistance at oral argument and in their capable pleadings.

APPLICATION GRANTED IN PART AND DENIED IN PART.

Vet.App.,1998.
Chesser v. West
11 Vet.App. 497

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.
Edwin ORTIZ, Plaintiff,
v.
Shirley S. CHATER, Commissioner of Social
Security. Defendant.
**No. 95 CV 3126 ERK.**

Jan. 30, 1997.

Charles E. Binder of Binder & Binder, for Plaintiff.
Stephen J. Riegel, Assistant U.S. Attorney, for
Defendant.

*MEMORANDUM & ORDER*

KORMAN, District Judge.
**\*1** Plaintiff owned and operated an appliance repair
shop until May 9, 1989. On that date, at the age of 55,
plaintiff closed his shop due to his alleged disability,
consisting of hypertension, back pain, and burning and
cramping sensations in his feet, legs, and hands. He has
not worked since, apparently subsisting entirely upon
public assistance and his savings.

Plaintiff applied to the Social Security Commission for
disability benefits (dating from May 9, 1989) on August
6, 1991. His application was denied on November 26,
1991, and it was reconsidered and denied again on
April 9, 1992. An administrative hearing was
subsequently held. After the conclusion of this hearing,
the presiding ALJ denied plaintiff's request for benefits
in a decision dated February 20, 1993. On June 2, 1993,
the Appeals Council vacated this decision and
remanded the case to the ALJ for consideration of the
medical report of one of the plaintiff's treating
physicians, Dr. Samkoff. On November 21, 1994, the
ALJ again denied plaintiff's application for benefits,
finding that plaintiff could perform his past relevant
work. On June 30, 1995, the Appeals Council rejected
a request for review of this second administrative

decision.

Plaintiff subsequently filed a complaint here seeking
judicial review of the denial of disability benefits. Both
parties moved for judgment on the pleadings. On June
7, 1996, at the conclusion of the hearing on these
motions, I remanded the matter to the Commission for
further consideration. Plaintiff now moves for an award
of attorneys' fees pursuant to the Equal Access to
Justice Act ("EAJA"), 28 U.S.C. § 2412 (1994). The
Commissioner opposes this motion, arguing that the
Administrative Law Judge ("ALJ") below was
"substantially justified" in denying plaintiff's disability
benefits claim, or, in the alternative, that other "special
circumstances" either make an award of attorneys' fees
inappropriate, or require that such an award be reduced
by fifty percent.

DISCUSSION

EAJA permits a party to recover its costs and attorneys'
fees from the Government in the following
circumstances:
Except as otherwise specifically provided by statute, a
court shall award to a prevailing party other than the
United States fees and other expenses, in addition to
any costs awarded pursuant to subsection (a), incurred
by that party in any civil action (other than cases
sounding in tort), including proceedings for judicial
review of agency action, brought by or against the
United States in any court having jurisdiction of that
action, unless the court finds that the position of the
United States was substantially justified or that special
circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Thus, with respect to disability claims such as
plaintiff's, to effect recovery pursuant to EAJA a party
must submit an application that establishes (or at least
alleges) the following: (1) he was a "prevailing party";
(2) he is otherwise eligible to recover such fees; (3) his
claim for fees is substantiated by his attorney's itemized

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                     Page 2
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

(and contemporaneous) statement of the actual time expended and the rates at which this time was billed; and (4) the United States was not "substantially justified" in its position. *Id.* at § 2412(d)(1)(B).

**\*2** Plaintiff's application here is sufficient to establish entitlement to recovery of attorneys' fees under EAJA. First, the remand of this case to the Commissioner for further proceedings makes the plaintiff a "prevailing party" for the purposes of EAJA. *See Shalala v. Schaefer, 509 U.S. 292, 302 (1993).* Second, plaintiff is otherwise eligible to recover fees pursuant to EAJA -- i.e., he appears to have a net worth of less than $2,000,000. *See* Hearing Transcript of June 7, 1996 at 6 ("[Y]ou have a situation in terms where the claimant is receiving welfare benefits. He does not have access to high amounts of resources[.]"). Third, plaintiff's application includes a contemporaneous, itemized schedule, prepared by his attorneys, of the hours they expended and the rates they requested for his representation. *See* Affirmation of Charles Binder, dated September 30, 1996, Ex. A - C ("Binder Aff."). Fourth, plaintiff has alleged that the Commissioner was not substantially justified in denying his application for disability benefits. Binder Aff. ¶3.

Under these circumstances, the Commissioner then bears the burden of establishing that the agency's position was substantially justified, or that other special circumstances make an award of fees unjust. *See Green v. Bowen, 877 F.2d 204, 207 (2d Cir. 1989)*(holding that "[t]he burden rests on the government to show that its position was reasonable"). The "position" that must be "substantially justified" includes both the position of the Commissioner in denying the claim, as well as the position of the United States Attorney in litigating it -- although only the former is at issue here. 28 U.S.C. § 2412(d)(2)(D).

The Commissioner opposes plaintiff's application for fees on two, independent grounds: (1) the ALJ's decision below was substantially justified; or (2) other special circumstances make any award of fees to plaintiff unjust, or at least require a fifty-percent reduction in the amount of such an award. After reviewing the record in this case, I find that the ALJ's decision was not substantially justified, but that a 20%

reduction in the amount of plaintiff's award is appropriate in light of the special circumstances of this case.

*A. Substantial Justification*

The phrase "substantially justified" connotes something that is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood, 487 U.S. 552, 565 (1988).* Thus, to qualify as "substantially justified", a position must be "more than merely undeserving of sanctions for frivolousness; [for] that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Id.* at 566. Instead, a position justification is deemed substantial only "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2.

In the Social Security context, if evidence in the record weighs equally in favor and against the Commissioner's position, then the agency's position has often been deemed substantial, notwithstanding the fact that the matter was remanded for further administrative proceedings. *See, e.g., Stein v. Sullivan, 966 F.2d 317, 320 (7th Cir. 1992)*(holding that ALJ's failure to consider contrary evidence, or at least articulate that he had considered it, did not necessarily mean that agency's position lacked substantial justification, both because there was evidence to support the agency's position, and because a genuine dispute existed as to claimant's condition); *Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir. 1987)*(holding that in close case reversing Secretary, where difficult judgments on conflicting and balanced evidence were required, position of the agency was substantially justified).

**\*3** Nonetheless, the fact that there is some evidence in the record that supports an ALJ's decision will not necessarily lead to a finding that the Commissioner's position was substantially justified. *See, e.g., Fulton v. Heckler, 784 F.2d 348, 349 (10th Cir. 1986)*(holding that Secretary improperly relied on deficient record, even though it contained some slight support for agency denial of benefits, and thus agency position was not substantially justified); *Luna v. Bowen, 663 F. Supp.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 3
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

109, 111 (D. Colo. 1987)(holding that "fact that the Social Security Administration has *some evidence* as opposed to *no evidence* does not make the Secretary 'substantially justified[]'").

In this case, the Commissioner asserts that the ALJ's decision was substantially justified, but she does not identify the particular bases for such a conclusion. Because, as noted above, the Commissioner bears the burden of establishing that her position was substantially justified, conclusory assertions like these are rarely adequate to the task. *See Martin v. Heckler,* 754 F.2d 1262, 1265 (5th Cir. 1985)(holding that the Secretary's "conclusory assertion of substantial justification does not discharge her statutory burden"). A brief review of the record in this case further confirms that, although this is a somewhat close case, the Commissioner's position was not substantially justified.

The ALJ's decision denying plaintiff benefits was defective in essentially four respects: (1) he characterized plaintiff's past work differently than he had in an earlier decision, without explaining the reasons for changing plaintiff's work classification (from a "medium" to a "light" level of exertion); (2) he failed to assess the credibility of plaintiff's subjective complaints of pain in accordance with applicable requirements; (3) he neglected to question the plaintiff concerning a significant evidentiary gap (i.e., a lack of treatment records from the Hospital for Joint Diseases); and (4) he did not credit, and failed to explain adequately his reasons for not crediting, medical evidence submitted by plaintiff's treating physicians that supported plaintiff's claims of disability.[FN1]

> FN1. Plaintiff also suggests that the ALJ who authored this opinion was biased -- another basis for finding that the agency's position was not substantially justified. *See, e.g., Claasen v. Heckler,* 630 F. Supp. 322, 324 (D. Kan. 1986) (holding that agency position was not substantially justified, because ALJ's decision was "hastily formed, ill conceived, and prejudicially drawn," and that it could only be explained if the ALJ was bent on defeating

claims to benefits rather than making an impartial decision). Yet, my decision to remand and directions to the Commissioner to reassign this matter to another ALJ reflected my feeling that, rather than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial. This would at least allay any concerns plaintiff might have respecting the impartial review of his claims -- even though I did not apprehend such bias in the earlier decisions.

Collectively, these deficiencies are more than sufficient to warrant a conclusion that the Commissioner's position was not substantially justified. *See, e.g., Flores v. Shalala,* 49 F.3d 562, 570-71 (9th Cir. 1995)(holding that ALJ's failure to ask about or consider an important vocational report and his failure to explain rejection of this probative evidence established that agency's position was not substantially justified); *Koss v. Sullivan,* 982 F.2d 1226, 1229 (8th Cir. 1993)(holding that ALJ's failure to obtain treating physician records, to otherwise adequately develop the record, or to evaluate complaints of pain under guidelines established by prior circuit opinions established that agency's position was not substantially justified); *Fraction v. Bowen,* 859 F.2d 574, 575 (8th Cir. 1988)(holding that although there was conflicting evidence in the record, ALJ's failure, contrary to clearly established circuit precedent, to evaluate all of the evidence concerning claimant's subjective complaints of non-exertional impairments and to otherwise fully develop the record indicated that agency's position was not substantially justified); *Reese v. Sullivan,* 925 F.2d 1395, 1397-98 (11th Cir. 1991)(holding that ALJ's failure to assess pain pursuant to clear Congressional and judicial directives, even though the result was supported by some factual evidence, rendered his decision, and thus position of agency, not substantially justified); *Murphy v. Bowen,* 691 F. Supp. 830, 833-34 (D.N.J. 1988)(holding that the ALJ's decision denying benefits without analytical comment or record reference to contradictory evidence was not substantially justified); *Dunn v. Heckler,* 614 F. Supp. 45, 48 (E.D.N.C. 1985)(holding that ALJ's failure properly to consider opinion of treating physician, to evaluate claimant's congestive heart failure in light of her other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

impairments, and to apply the medical-vocational grids indicated that agency's position was not substantially justified; _Love v. Heckler,_ 588 F. Supp. 1346, 1348-49 (M.D. Ala. 1984)(holding that ALJ's decision -- which ignored medical reports of three physicians, misstated evidence supporting the finding of at least one physician, and failed to adhere to established circuit precedent -- was not substantially justified).

### B. Special Circumstances

**\*4** Even if an agency's position was not substantially justified, an award of fees may be denied or reduced pursuant to EAJA if "special circumstances" would make an otherwise proper award "unjust." **28 U.S.C. § 2412(d)(1)(A).** Although the statute does not **define** the key terms "**special circumstances**" and "**unjust**", the Second Circuit has held that equitable considerations should inform a court's decisions in this area. _See Oguachuba v. INS,_ 706 F.2d 93, 98 (2d Cir. 1983)(holding that the "special circumstances" provision of EAJA "explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party"). Thus, notwithstanding the fact that "[a] party's shifting fortunes over the course of a lawsuit ... cannot impair its ultimate status as a 'prevailing party[,]'" if "the party in question did not substantially prevail on the merits, the justness of an attorney's fee award to that party is diminished." _United States v. 27.09 Acres of Land,_ 43 F.3d 769, 773 & n.2 (2d Cir. 1994); _see also Sands v. Runyon,_ 28 F.3d 1323, 1333 (2d Cir. 1994)(affirming reduction of fees for work on unsuccessful and meritless claims).

An unpublished opinion from the Northern District of Illinois, _Williams v. Bowen,_ 1987 WL 10559 at \*3-\*4 (May 6, 1987), is somewhat instructive in cases such as this one. In _Williams,_ the plaintiff had rejected the Commissioner's settlement proposal (i.e., to remand the matter to the agency for further development of the record) and was therefore responsible for continuation of the litigation. _Id._ at \*3. Additionally, the _Williams'_ plaintiff was represented by counsel at the administrative level, and thus he bore some responsibility for the inadequately developed

administrative record. _Id._ at \*4. Although this did not excuse the ALJ's own error in proceeding on an inadequate record, the plaintiff nonetheless was primarily and directly responsible for the need to remand the case, leading Judge Moran to hold that such "special circumstances" made an award of EAJA fees to the plaintiff "unjust." _Id._

In this case, the Commissioner asserts that "special circumstances" -- namely, the plaintiff's failure to obtain and submit treatment records from the Hospital for Joint Diseases (to which he was referred by his doctor) -- make an award of fees "unjust," or at least require a fifty-percent reduction in the amount awarded. The Commissioner suggests that this was crucial evidence, and that this evidentiary gap figured prominently in my decision to remand the matter to the Commission for further development of the record. Moreover, the Commissioner notes that because plaintiff was represented by counsel at the earlier administrative proceedings, he should be held primarily responsible for failing to develop the record in this regard.

This case, however, is distinguishable from _Williams_ in two important respects: first, there was not a settlement offer from the Commissioner; second, although plaintiff was represented by counsel at the administrative level, and thus he shares significant responsibility for the inadequately developed record, this evidentiary gap was not the only error requiring remand. _FN2_ Thus, it would be inequitable to deny plaintiff recovery of attorneys' fees _in toto_ simply because he was partially responsible for one of the errors necessitating a remand of the matter to the Commission.

> FN2. The ALJ also shares a modicum of responsibility for this evidentiary gap. The evidence at issue was highly relevant, and, indeed, it may have been the most expert opinion available. Thus, the ALJ should have at least asked why records from the Hospital for Joint Diseases had not been introduced into the record.

**\*5** Nonetheless, some reduction in the amount of plaintiff's award is appropriate in light of plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 5
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

proportionate responsibility for the insufficiently developed administrative record. The Commissioner suggests that this reduction should be on the order of fifty percent. Although the Commissioner does not articulate why a fifty percent reduction (as opposed to a lesser or greater one) is appropriate here, her proposal seems to represent a "split-the-difference" approach -- i.e., plaintiff advocates a full award, the Commissioner advocates no award, and thus I should split the parties' differences by granting plaintiff half the award to which he would otherwise be entitled. However, after reviewing the totality of the circumstances in this case, and attempting to apportion blame as equitably as practicable, I find that a twenty-percent reduction in plaintiff's award is more appropriate.

### C. The Rate at Which Fees Can Be Charged

Plaintiff suggests that the statutory cap of $75.00 per hour for attorneys' fees should be adjusted upward by an appropriate factor for cost-of-living increases since enactment of the cap in 1981, and its subsequent reauthorization in 1985. Specifically, plaintiff suggests that the cap should be adjusted upward to $134.70 per hour to reflect the approximately eighty-percent increase in the Consumer Price Index ("CPI") for the New York metropolitan area since 1981. *See* Binder Aff. ¶9. However, the propriety of using such a local cost-of-living adjustment remains unclear.

The Second Circuit has acknowledged that fees should be adjusted for "inflation" in appropriate circumstances, but it has not specified whether a national or local cost-of-living adjustment should be used. *See Harris v. Sullivan,* 968 F.2d 263, 265-66 (2d Cir. 1992)(holding that "[t]he district court should apply the $75 statutory cap for hourly rates and adjust the same for general inflation since October 1, 1981"). Nonetheless, Judge Haight, among others, has questioned whether the use of a local adjustment is appropriate in light of Congress' prescription of a national, uniform cap on attorneys' fees. *See Wedra v. Thomas,* 623 F. Supp. 272, 278 (S.D.N.Y. 1985)(holding that plaintiff failed to submit evidence indicating that New York adjustment was higher than other localities, and stating that "even if he had, I am not certain that such a geographical exception

is permitted under the statute. Surely Congress was aware in enacting the attorneys' fees provisions of the wide disparity in fee rates between urban and rural areas; between the Northeast and the Midwest, etc.; yet Congress chose to set one uniform rate to be applied nationwide."); *see also* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two),* 56 La. Law Rev. 1, 128-45 (1995)(suggesting that use of a national cost adjustment -- i.e., the CPI, All Regions -- is more consistent with Congress's original intent in enacting a national, uniform cap for attorneys' fees and is more reliable than other regional or metropolitan indices that might be used).

**\*6** Congress's recent amendment of EAJA, which raised the national cap on hourly fees by approximately sixty-seven percent, is instructive on this issue. *See* Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 232(b), 110 Stat. 847, 863 (1996)(codified at 28 U.S.C. § 2412(d)(2)(A)) (raising cap on hourly rates from $75.00 to $125.00 per hour). While this amendment is not retroactive, and thus the new cap is not binding in this case, it at least suggests what an appropriate cost-of-living adjustment should be in these circumstances. Indeed, the congressional calculation may well be a better approximation than the CPI figures compiled by the Bureau of Labor Statistics -- the substantial inaccuracy of which has recently been the subject of criticism. *See, e.g.,* Michael J. Boskin, *Prisoners of Faulty Statistics,* Wall St. J., Dec. 5, 1996, at A20 (summarizing findings of Boskin Commission that CPI measurement overstated inflation by approximately 1.1 percentage points per year). Using the $125.00 figure also preserves national uniformity (at least in the short term) and ensures that those who bring claims after the new cap becomes effective do not receive less per hour than those who brought their claims before it became effective -- a result which, absent the amendment, could only be explained by an intervening period of deflation.

### CONCLUSION

In view of the preceding, I find that plaintiff is entitled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                     Page 6
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

to an award of $3275.00 for attorneys' fees incurred in
conjunction with this case. This amount is arrived at by
multiplying 32.75 hours times $125.00 per hour, and
then reducing that sum ($4093.75) by twenty percent to
take into account plaintiff's proportionate responsibility
for the need to remand this matter.

SO ORDERED.

E.D.N.Y.,1997.
Ortiz v. Chater
Not Reported in F.Supp., 1997 WL 50217 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:95cv03126 (Docket) (Aug. 04, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.